| 16 | 577 |
| f50 | 364 |
| 50 | 393 |
| 50 | 395 |
| 50 | 396 |
| 50 | 403 |
| 50 | 404 |

# DECISIONS

OF THE

# SUPREME COURT OF FLORIDA.

JUNE TERM, A. D. 1878.

THE STATE OF FLORIDA, EX REL. THE ATTORNEY-GENERAL, PLAINTIFF, vs. PETER KNOWLES, ET ÁLS., RESPONDENTS.

1. Chapter 3045 of the Laws of Florida, being "An act in relation to the Florida Agricultural College," is passed in compliance with the constitutional requirements covering the subject. The act being amended by this act is referred to by its title, by its chapter, and the sections amended are re-enacted and published at length. This is sufficient.

2. The Florida Agricultural College is a public corporation. It was founded by the State of Florida with public moneys derived in trust from the government of the United States. It is within the power of the Legislature to change the Trustees named as corporators.

3. The corporators in such a corporation having made a particular contract with an individual, is no reason why such corporators are not subject to legislative control and removal.

The Congress of the United States, by an act approved July 2, 1862, granted to the several States an amount of public lands, to be apportioned to each State, equal to thirty thousand acres for each Senator and Representative; or, where there were no lands within the State subject to sale at private entry, land scrip for the amount in acres; the moneys derived from the sale of this land or scrip to be invested and to constitute a perpetual fund, the principal to remain forever undiminished, and the interest to be appro-

37

priated to the endowment and support of at least one Agricultural College.

This grant was made on the following condition, viz:

1. That the assent of the several States should be signified by legislative acts within two years from the date of the approval of the act.

2. That at least one college should be provided within five years. If these conditions were not complied with within the time specified, by any State, the grant to such State should cease.

By a subsequent act of Congress, approved July 23, 1866, the time for accepting the grant was extended to three years from the passage of the act, (July 23, 1866) and the time for providing the college to five years from the filing of such acceptance with the Commissioner of the General Land Office.

The Legislature of Florida, by Chapter 1766, entitled "An act to establish the Florida Agricultural College," approved February 18, 1870, (seven months after the expiration of the time allowed by the act of Congress of July 23, 1866,) signified its acceptance of the grant by providing for the establishment of an Agricultural College.

The trustees named in the foregoing act never met and organized, as provided in the act, or accepted the charter, and no steps were taken towards establishing the college.

In 1872 the Legislature passed an act entitled "An act supplementary to Chapter 1766 of the session laws of A. D. 1870, being 'An act to establish the Florida Agricultural College,'" (Chapter 1905) approved February 17, 1872.

The corporators named in this latter act, or a majority of them, met on the 20th day of March, 1872, and organized as directed in the act by electing the required officers and an executive committee, and authorized the executive committee to ask for and receive the land scrip to which the State was entitled. Under this authority the executive commit-

tee applied to the Secretary of the Interior for the land scrip, but the application was refused on the ground that the State had not complied with the conditions of the acts approved July 2, 1862, and July 23, 1866, and consequently was not entitled to the scrip. Then Congress, by an act approved December 13, 1872, directed the Secretary of the Interior to deliver scrip for ninety thousand acres to the Secretary of the Board of Trustees of the Florida State Agricultural College.

In accordance with this act the scrip was delivered to the order of the Secretary of the Florida State Agricultural College, and was sold by the trustees and investments made in bonds of the State of Florida. The trustees then proceeded to complete the organization and establishment of the college, and to select a site for the location of the college buildings, in accordance with section 10 of Chapter 1766. To this end they advertised for propositions from different localities desiring the location of the college for contributions to aid in its construction, and received from Wm. H. Gleason an offer of over two thousand acres of land, situated at Eau Gallie, on condition that the college should be permanently located at that place. The trustees accepted this offer, and a contract was made with Mr. Gleason, by which the land was conveyed to the college, and the location of the college was fixed at Eau Gallie, where the trustees commenced the construction of buildings.

The Legislature of 1877, by an act entitled "An act in relation to *the Florida Agricultural College*," approved March 17, 1877, (Chapter 3045) provided for a change of the entire management and control of the Florida State Agricultural College, by removing the trustees or directors created by Chapter 1905, and substituting others in their stead; and also a change of the organization of the officers and committees, and the removal of the college from Eau

Gallie, where it had been located under the contract made with Mr. Gleason.

Soon after the passage of this act, the persons therein named as corporators or trustees met and organized under the name of the Florida Agricultural College, and the Treasurer made a demand upon the Treasurer of the Florida State Agricultural College for the property belonging to that institution. This demand the Treasurer of the Florida State Agricultural College refused to comply with, as the trustees declined to accept the amendment to their charter.

At the June term, A. D. 1877, the Attorney-General filed an information in the nature of a *quo warranto*, alleging that Peter Knowles, Robert Meacham, John Varnum, Frederick Hill, Thomas W. Osborn and N. H. Moragne and B. F. Oliveros had, without authority or warrant of law, for the period of fifty days or more past, exercised, and were still exercising, without authority or warrant of law, the franchises, privileges and liberties of a body corporate, by and under the name of *The Florida State Agricultural College*, and under such name had used and exercised without warrant of law, and were, without warrant of law, exercising the general powers of a body corporate, for the purpose of teaching such branches of learning as are related to agriculture and the mechanical arts, military tactics and other scientific and classical studies, in order to promote the liberal and practical education of the industrial classes in the several pursuits and professions of life, including the power to use a corporate seal, to build and construct college buildings, to contract and be contracted with, sue and be sued, and to receive donations and make purchases of lands, and sell and convey the same; and praying due process of law against them, to answer to the State by what warrant or authority they claim to exercise such franchises, liberties and powers.

The respondents answered, admitting that they had exercised, and were still exercising, the franchises, privileges and liberties of a body politic, by and under the name of the Florida State Agricultural College, in the manner and for the purposes set forth in the information, but denying that they ever have, or that they then exercised the same *without warrant of law*, and alleging that the Florida State Agricultural College was established by an act of the Legislature of Florida, entitled "An act to Establish thé Florida Agricultural College," approved February 18, 1870, being Chapter 1766 of Laws of Florida, which said act was amended by an act entitled "An act Supplementary to Chapter 1766, of the Session Laws of A. D. 1870, being an act to Establish the Florida Agricultural College," approved February 17, 1872, being Chapter 1905, Laws of Florida; that by the said acts Wm. D. Bloxham, Oliver Bronson, Chandler H. Smith, Josiah T. Walls, Robert Meacham, John Varnum, J. S. Adams, Peter Knowles and the Superintendent of Public Instruction (by virtue of his office as such), their associates and successors, were created a body politic by the name of the Florida State Agricultural College, for the purposes set out in the information; that the said persons were thereby constituted a Board of Trustees, and invested with full power to manage and control the said college, and the property belonging thereto, in the manner and subject to the restrictions set forth in the said acts, and that in case any vacancy or vacancies should occur in the said Board of Trustees, the remaining trustees were authorized and empowered to fill such vacancy or vacancies, subject to the approval and confirmation of the Supreme Court of the State of Florida; and that the said corporators and trustees hereinbefore named, or a majority of them, in accordance with the provisions of the said acts, did, on or about the 20th day of March, 1872, meet at the office of the said Superintendent of Public Instruction, in the city of Tallahassee, and accept

the said charter of incorporation, by proceeding to organize under the said acts by the election of such officers, committees and agents as the said acts of incorporation required; and that they did, then and there, and that they and their successors have, to the present time, continued to take charge and control of the said college, and of its property, and to faithfully perform all the duties imposed upon them by the said acts of incorporation; and that on or about the 8th day of March, 1875, two of the said trustees, to-wit: Bloxham and Walls, did resign their offices as trustees of the said college, and thereupon two of the defendants, to-wit: N. H. Moragne and Frederick Hill, were elected by the said Board of Trustees to fill the said vacancies; that said elections were approved and confirmed by the said Judges of the Supreme Court and accepted by the said Moragne and Hill; and that afterwards two other of the said trustees, to-wit: Adams and Bronson, having died on or about the 28th day of December, 1876, two other of these defendants, to-wit: Thomas W. Osborn and B. F. Oliveros, were duly elected by the Board of Trustees to fill the said vacancies, and said elections were also approved and confirmed by the said Judges of the Supreme Court and accepted by the said Osborn and Oliveros; and that by virtue of the said acts of incorporation, and of the several elections to fill vacancies, as before specified, the defendants, together with Chandler H. Smith aforesaid and the Superintendent of Public Instruction (by virtue of his office), now constitute the Board of Trustees of the Florida State Agricultural College, and have full legal authority to exercise all the franchises of a body corporate conferred by the said acts of incorporation, to be exercised under the name, and in the manner and for the purposes in the said acts specified.

The Attorney-General filed a replication denying that *The Florida State Agricultural College* was established by Chapter 1766, as alleged in said answer, but that it was by the

act approved *February* 17, 1872, Chapter 1905, referred to in said answer, and no other law of the State of Florida, that said Bloxham, Bronson, Smith, Walls, Meacham, Varnum, Adams and Knowles and the Superintendent of Public Instruction, by virtue of his office as such, their associates and successors, were created a body politic, in the name of *The Florida State Agricultural College*, or constituted a Board of Trustees, as alleged in said answer, and that it was not until the enactment and approval of said Chapter 1905 that the said persons were created such body politic and constituted such Board of Trustees; and alleging that the Legislature of the State of Florida, at its session begun and held in the year A. D. 1877, passed an act entitled "An act in Relation to *The Florida Agricultural College*," and that such act was approved by the Governor of Florida on the 7th day of March, 1877, being Chapter 3045, Laws of Florida, and then became a law of said State; that by the first section of said act, the *second section* of Chapter 1905 of the Laws of Florida, by which section it was that said Bloxham, Bronson, Smith, Walls and others and their successors were created said body, to-wit: *The Florida State Agricultural College*, was amended so as to be and read as follows: " The Superintendent of Public Instruction and the Treasurer of the State of Florida, by virtue of their offices as such, and J. Wofford Tucker, David S. Walker, J. H. Roper, James M. Baker, C. H. Smith, F. Branch, W. D. Barnes, their successors, are hereby constituted a body corporate and politic, by the name of the Florida Agricultural College, and are intrusted with the general powers of a corporation, for the benefit of causing to be taught such branches of learning pertaining to agriculture and the mechanical arts, military tactics, and other scientific and classical studies, in order to promote the liberal and practical education of the industrial classes in the several pursuits and professions of life; and said corpora-

tion shall have perpetual succession, as is provided in the original act incorporating said college, and the right to use a corporate seal." That by the second section of said Chapter 3045 the third section of said Chapter 1905 was amended so as to read and be as follows : " The said Superintendent of Public Instruction and the said State Treasurer shall, by virtue of their offices as such, be president and treasurer of said board of trustees of said college, and the said board shall elect a vice-president, secretary and executive committee, which committee shall consist of five members. Said executive committee is empowered to act in behalf and under direction of the board between the regular meetings of the same and determine all the matters relating to officers or committees, and make all needful rules and regulations for the management of the affairs of the board ;" that by the third section of said Chapter 3045, of the Laws of Florida, the treasurer of said board of trustees therein appointed is authorized, and it is made his duty to receive, and, if necessary, demand and send for in his own name, as treasurer, all property and debts belonging to said board ; and by the fourth section of said act last named, the board of trustees, therein provided for, are given powers to remove the Agricultural College located at Eau Gallie, on Indian river, in Brevard county, to any point that, in their judgment, would be for the best interests of the State of Florida, such point to be easily accessible and as near the centre of the State as practicable ; and that on or about the 11th day of May, A. D. 1877, the corporators named in said first section of said Chapter 3045, or a majority of them, did, in accordance with the provisions of said act, meet and then and there accept said charter of incorporation, with which they were created by said last named act, for the purposes and with the powers provided and set forth in said Chapters 1766, 1905 and 3045, of the Laws of Florida, as the same and each of them stood of force and effect on said 11th day

of May, A. D. 1877, and now stand, and did proceed to organize, under said acts, by the election of such officers and committees as said acts required, and then and there and thereby became, and have ever since been and still are such body politic and corporate, under the name of *The Florida Agricultural College*; and the Board of Trustees of said college, the same being the body politic and corporate and Board of Trustees thereof provided and contemplated by said Chapters 1766, 1905 and 3045, according to the force and effect of the same, from and since the approval of said last named law, on the 7th day of March, A. D. 1877, with *full* and *exclusive power to use, enjoy* and exercise all and singular the powers and franchises provided by said Laws of Florida, under the name of *The Florida Agricultural College;* and that by the force and effect of said Chapter 3045, or by the force and effect of said act and the acceptance by said corporators or persons named in said first section of said act of said charter, provided and constituted by said Chapters 1766, 1905 and 3045, under the name of *The Florida Agricultural College*, and the election of such officers and committees, the franchises and privileges, rights and liberties granted to said W. D. Bloxham and others aforesaid, their associates and successors, and the right of being a body politic and corporate, under the name of *The Florida State Agricultural Colleye*, were taken away from the respondents; and that by the force and effect of said Chapter 3045, and the acceptance by said corporators named therein of said charter, provided by said Chapters 1766, 1905 and 3045, under the name of *The Florida Agricultural College*, and the election of such officers and committees aforesaid, the said corporators or persons named in said first section of said act, approved March 7, 1877, became a body corporate, under the name of *The Florida Agricultural College*, invested with exclusive right to exercise all the privileges, liberties and franchises provided or created in or by said

Chapters 1766, 1905 and 3045; and that the respondents have, since the 7th day of March, A. D. 1877, the day of the approval of said Chapter 3045, exercised, without warrant of law, and usurped the liberties, franchises and privileges, as charged in said information.

Respondents then filed a rejoinder, alleging that notwithstanding anything to the contrary alleged in the said replication, the said Florida State Agricultural College was established by an act of the Legislature of the State of Florida, entitled " An act to establish the Florida Agricultural College," approved February 18, 1870, *as amended* by an act entitled " An act supplementary to Chapter 1766 of the session laws of A. D. 1870, being " An act to establish the Florida Agricultural College," approved February 17, 1872; and that notwithstanding Chapter 3045, approved March 7, 1877, or the acceptance of the said act by the corporators or persons named in the first section thereof, the franchises, liberties and privileges of the said respondents, and their right of being a body politic under the name of *The Florida State Agricultural College,* granted to them by Chapters 1766 and 1905 aforesaid, were not taken away from the respondents; and that the said corporators or persons named in the said first section of Chapter 3045, did not become thereby invested with the exclusive right, or with any right whatever, to exercise the privileges, liberties and franchises provided or created in or by the said Chapters 1766 and 1905; and that said Chapter 3045 has not and never had the force and effect of a law of the statute of the State of Florida, and did not, in any manner or form, operate to alter or amend the said Chapters 1766 and 1905, of the Laws of Florida, or to deprive the said respondents of any powers or franchises belonging to or enjoyed by the said respondents by virtue of Chapters 1766 and 1905, or confer any of said powers and franchises, or any other powers and franchises upon the said corporators or persons

named in the said first section of Chapter 3045, *because* Chapter 3045 does not comply with the requirements of the Constitution of the State of Florida in this, *that the subject of the said act is not briefly expressed in the title of the said act;* and, furthermore, in that the acts undertaken to be amended or revised by the said act, (to-wit: Chaps. 1766 and 1905,) *were not thereby re-enacted as amended or revised* and *published at length,* but were amended or revised without such re-enactment and re-publication, *and by reference only to the title of one only of said acts*; and because that the said Chapter 3045 has not and never had the force and effect of a law of the State of Florida, *because it is ·in violation of the Constitution of the United States in this, that it takes away vested rights acquired by the said respondents under and by* virtue of the said Chapters 1766 and 1905, and impairs the obligation of the contract created by the said acts between the State of Florida and respondents; and because that the said Chapter 3045 is in violation of the Constitution of the United States, in this, that it impairs the obligation of contracts made in pursuance of the said Chapters 1766 and 1905 between the said Florida State Agricultural College, or the trustees thereof, and divers and sundry persons dealing and contracting with the said trustees under and by virtue of the said acts; and because in passing the said act the Legislature of the State of Florida exceeded its powers, in this, that the said Legislature could lawfully exercise no control over the said Florida State Agricultural College, or over the property belonging thereto, except such as may have been expressly reserved in the charter of said college as contained in the said Chapters 1766 and 1905; because the funds, lands, and other property belonging to the said college and in the custody and under the control of the respondents was granted directly to the trustees of the said college by the Congress of the United States or by private individuals in trust for the pur-

588          SUPREME COURT.

State ex rel. Attorney-General v. Knowles et als.—Argument of Counsel.

poses specified in the said charter, and was not granted by
the State of Florida, and is not now and never was in any
manner or form the property of the State of Florida, or sub-
ject to its custody or control.

The Attorney-General then filed a surrejoinder denying
that any of the funds or lands, or other property, in the cus-
tody of respondents was granted directly to the trustees of
said college, as alleged in said rejoinder, by the Congress of
the United States, or by private individuals, in trust for the
purposes specified in said charter, and not to the State of
Florida; and alleging that said property, and funds, reve-
nues and lands in the custody of respondents, are the prop-
erty of the State of Florida, and contended that even if any
property was granted directly to said college by private in-
dividuals or the United States for the purpose of said col-
lege, that nevertheless the respondents, *without warrant of
law*, exercised the liberties, franchises and privileges.

The cause was heard at the January Term, A. D. 1878.

*The Attorney-General* for the State.

It is contended by the respondents that the act entitled
" An act in relation to the Agricultural College," approved
March 7th, 1877, being Chapter 3045 of Laws of Florida, is
of no effect, because it does not comply with the 14th sec-
tion of the 4th Article of the Constitution of 1868, which is in
the following language, to wit : " Each law enacted in the
Legislature shall embrace but one subject and matter prop-
erly connected therewith, which subject shall be briefly ex-
pressed in the title, and no law shall be amended or revised
by reference to its title only, but in such case the act as re-
vised, or section as amended, shall be re-enacted and pub-
lished at length."

The first ground of objection is : " That the subject of

State ex rel. Attorney-General v. Knowles et als.—Argument of Counsel.

the said act shall be briefly expressed in the title of said act."

The second ground of objection is : "That the acts undertaken to be amended or revised by said act, to wit: The act entitled ' An act to establish the Florida Agricultural College,' approved February 18th, 1870, and the act entitled ' An act supplementary to Chapter 1766 of the session laws of Florida, 1870, being an act to establish the Agricultural College,' approved February 17th, 1872, were not thereby re-enacted as amended or revised, and published at length, but were amended or revised without such re-enactment and republication and by reference only to the title of one only of such acts."

We address ourselves to the first objection, to wit : " That the subject of the act is not briefly expressed in the title of said act."

The first inquiry is, what is the "subject of an act," within the meaning of the constitutional provision ? The second is the extent to which this subject must be elaborated in the title ; and the third is the limit or license of discretion which the courts accord to the Legislature in determining for themselves what is a sufficient expression of the subject of the act in the title.

I. What is the subject of this act? Common sense has some play in this matter. The title is " An act in relation to the Florida Agricultural College." The mention of the term Florida Agricultural College leads the mind of even those who are the least informed, with most accurate promptness, to the only institution and the only property which, in the history of the legislation of this State, has been designated by such terms. Every mind concludes at once that it refers to the organization to which the State delegated the duty of appropriating the land or land scrip granted by the United States to the State of Florida to the purpose of such grant, to wit: an Agricultural College.

The subject of the act is the property of every kind, including the buildings erected at Eau Gallie as well as the other property of the organization, and the organization itself. The most careful reading of the act discloses that there is nothing in it that does not relate to that college, its properties, organization or management; and that everything in it appertains to the college suggested by the title.

It is true that in Chapter 1905 of the Laws of Florida the corporators are constituted a body corporate and politic by the name of the *Florida State Agricultural College*, but it is equally true that by Chapter 1766 of the Laws of Florida (the original act) the college is established as the *Florida Agricultural College*, (sec. 1) and it is unquestionable that the use of either designation brings to the mind of every intelligent man in Florida the same subject.

There is nothing in either of the three acts in question which does not relate to the same subject.

In the case of Morton, Bliss & Co. vs. Comptroller General, (4 S. C., 442,) the matter of the subject of an act is discussed. Whether we consider such subject to be either a "right, obligation, or power created, modified, or destroyed, for the purpose of obtaining some end, either of public or private advantage, which constitutes the object of the statute," the right, obligation, or power created, modified, or destroyed by the statute of 1877 in question, is fully expressed in the title.

Such constitutional provisions as the one in question are of comparatively recent date, but have been very fully adjudicated by the several Supreme Courts of many States of our Union.

We address ourselves to the first objection, to wit: "That the subject of the act was not briefly expressed in the title of said act."

We cite the following authorities as showing that in so far as the expression of the subject of the act in the

title is concerned, the purpose of the constitutional provision was to prevent legislators from being misled, taken unawares, or deceived as to the real purpose of any action they might be called upon to take in their official capacities, and we respectfully submit that in the light of these authorities the title of the said act is amply sufficient to secure it from condemnation under the constitutional provision: Gibson vs. State, 16 Fla.; Thadlock vs. Ellis, 20 Texas, 792–3; People vs. Mahony, 13 Mich., 482; People vs. Pritchard, 21 Mich., 236; State vs. McCrackin, 42 Texas, 383; Collins vs. Henderson, 11 Bush, Ky., 75; Ramon vs. Mathews, 8 Heiskell, 504–5; Division Howard Co., 15 Kan., 194, 214, 215; State Line & I. I. Cos., Appeal, 77 Penn. St., 429; People vs. State In. Co., 19 Mich., 392; Harrington vs. Ware, 23 Mich., 385; Litchfield vs. Vernon, 41 N. Y., 123; State vs. Town of Union, 33 N. J., (Law) 351; Lead vs. Lead, 30 Ind., 171; Shields vs. Barnett, 8 W. Va., 74; La Font vs. Dufroe, 9 La. An., 350.

As to the limit or license allowed to the Legislature, as to what should be expressed in the title, we refer to the following authorities: Dugan vs. Morrow, 2 Vroom, 136; Brewster vs. Syracuse, 19 N. Y., 116; State vs. Town of Union, 4 Vroom, 354.

As to the second ground of objection, we submit that there has been no express amendment or revision of either of the acts prior to 1877 as acts, but that the amendment, if an express amendment, is the amendment of particular sections of Chapter 1905 as contra-distinquished from an amendment or revision of either of said acts as acts. That if there is any amendment of any of the sections of said acts, other than those expressly amended, the amendment is by implication, and that there is nothing in our Constitution which prohibits the amendment of a section or sections as contra-distinguished from a whole act, or the repeal of a

section or a whole act by implication. State vs. Draper, 47 Mo., 29 ; People vs. Wands, 23 Mich., 385.

*David S. Walker, Sr.,* on the same side.

In the case of the Trustees of Dartmouth College vs. Woodward, reported in 4 Wheaton, 526, the Legislature of New Hampshire changed the charter of the college which the British Crown had granted the trustees in 1769, by changing the trustees and in other respects. The defendant, Woodward, was in possession of some of the property of the college, and the new trustees brought suit to recover it. He resisted the suit on the ground that the act changing the trustees was unconstitutional.

Chief-Justice Marshall, in delivering his opinion in this case, said : "If the act of incorporation was a grant of political power—if it created a civil institution to be employed in the administration of the government, or if the funds of the college be public property, or if the State of New Hampshire as a government be alone interested in its transactions, the subject is one in which the Legislature of the State may act according to its own judgment, unrestrained by any limitation of its powers imposed by the Constitution of the United States ;" and again, "we are informed by the case of Philips vs. Barry, 1 Lord Raymond, 5, S. C., 2 T. R., 346, which contains all the doctrines of corporations connected with this point, that there are two kinds of corporations aggregate, viz : such as are for public government, and such as are for private charity. The first are those for the government of towns, cities or the like, and, being for public advantage, are to be governed according to the law of the land, the validity and justice of their private laws and constitution, are examinable in the King's Courts. Of these there are no particular founders, and consequently no particular visitors. There are no pat-

rons of these corporations; but private and particular corporations for charity, founded and endowed by private persons, are subject to the private government of those who create them, and are to be visited by them and their heirs as they may appoint. The only rules for the government of the private corporations are the laws and constitutions assigned by the founders. This right of government and visitation arises from the property which the founder had in the lands assigned to support the charity, and as he is the author of the charity, the law invests him with the necessary power of inspecting and regulating it."

Justice Story, in the same case, also explains the difference between public and private corporations. He says: "Another division of corporations is into public and private. Public corporations are generally esteemed such, or exist for public purposes only, such as towns, cities, parishes and counties, and in many respects they are so, though they involve some private interests; but strictly speaking, public corporations are such only as are founded by the government for public purposes, when the whole interest belongs to the government. If, therefore, the foundation be private, though under the charter of the government, the corporation is private, however extensive the uses may be to which it is devoted, either by the bounty of the founder, or the nature and objects of the institution. For instance, a bank created by the government for its own use, whose stock is owned exclusively by the government, is, in the strictest sense, a public corporation; so a hospital created and endowed by the government for general charity. But a bank whose stock is owned by private persons is a private corporation, although it is created by the government and its objects and operations partake of a public nature."

A little further on, in the same opinion, Judge Story says: " When the corporation is said at the bar to be public,

it is not merely meant that the whole people may be the proper objects of the bounty, but that the government has the sole right, as trustee of the public interests, to regulate, control and direct the corporation, and its funds and its franchises, at its own good will and pleasure. Now such an authority does not exist, except when the corporation is, in the strictest sense, public."

It is plain from the foregoing extracts from the opinions of Judges Marshall and Story, that the Legislature has the constitutional power to change the trustees, and in other respects to alter the charters of public corporations, but not of private ones.

The only question, therefore, is whether the Florida Agricultural College is a public or a private corporation? It is clear from the extracts which I have read that if the funds with which the college was established are public, then the college is a public corporation, if not it is a private corporation.

The only question left is: Were the funds with which this college was founded public or private?

The act of incorporation of 1870 shows upon its face that all the funds with which the college was endowed were public—the property of the State through the gift of the United States.

Sec. 7 of said act reads thus: " Sec. 7. Said trustees are hereby authorized to claim and receive from the Secretary of the Interior the Agricultural Land Scrip to which this State is entitled, by act of Congress of July 2, 1862, and acts supplemental thereto. Said scrip is hereby transferred and assigned to and vested in the Trustees of the Florida Agricultural College and their successors and assigns forever."

The scrip so granted by Congress to the State, and by the State to the College, is expressly recognized in sections 8, 9, 12 and 17 of said act as " the fund " or " funds" of said

college, and no mention is made in the act of any other "fund or funds" whatever. That the whole fund of the college at the time of its incorporation consisted of said grant, is an historical fact too well authenticated to need argument.

The funds of the college being public property, it follows, in the language of Chief Justice Marshall, that the subject is one in which the Legislature of the State may act according to its own judgment, unrestrained by any limitation of its power imposed by the Constitution of the United States.

The law thus laid down in the Dortmonth College case has been received and acted on by the courts of Alabama, Arkansas and Kentucky, and perhaps other States, where banks, colleges and other institutions, whose funds were furnished exclusively by the State, have been adjudged to be public institutions, whose charters are subject to be amended and altered at the will of the Legislature. See 5 Stewart and Porter.

The case of McCulloch vs. the United States was decided in 1820, 4 Wheaton, 316, and Osborn vs. The Bank in 1824, 9 Wheaton, 738. These cases hold that the bank of the United States was a public corporation, created for public and national purposes. The court treated the United States bank as one of the institutions of the government.

In Osborn vs. The Bank of the United States, C. J. Marshall said: "The bank is not considered as a private corporation, whose principal object is individual trade and individual profit, but as a public corporation created for national purposes." * * * "It was not created for its own sake, or for private purposes." 9 Wheaton, Con. R., 770.

The whole opinion of the court is founded on the idea that the bank in McCulloch vs. Maryland is an institution which is necessary and proper for carrying into effect the powers vested in the government of the United States. "It

is not an instrument which the government found ready made and supposed to be adapted to its purposes, but one which was created in the form in which it now appears for national purposes only. It is undoubtedly capable of transacting private as well as public business. While it is the great instrument by which the fiscal operations of the government are effected, it is also trading with individuals for its own advantage."

A writer in the Law Review says: "The opinion of Taney in the bridge case was, as Story felt, a great departure from the principles underlying the opinion of Marshall in Fletcher vs. Peck and in the college case. The opinion in Munn vs. The People is, in effect, a far greater one."

The court will see from the foregoing opinions that the Supreme Court of the United States has largely modified its rulings in the college case, and now holds a good many institutions to be public and subject to legislative control, which could not be so held under the strict rulings of that case. But admitting all the rulings in the Dartmouth College case to be in full force, I have shown that the Florida Agricultural College is a public corporation, whose trustees may be removed by the Legislature. This was the view of the law taken by the Legislature, when, in 1872, they amended the charter by changing the trustees, and this was the view taken in 1877, when the trustees were again changed.

To quote the language of Judge Washington: "These trustees have no interest, no privileges and immunities which are violated by such interference. * * They accepted the charter for the public benefit alone, and there should seem to be no reason why the government, under proper limitations, should not alter or modify such a grant at pleasure. * * * All those powers, rights and privileges flow from the property of the founder in the funds assigned for the support of the charity. * * * * The endower is the *perficient* founder to whom of right belong

all the powers and privileges which have been described." By looking at the act of Congress of July 2, 1862, the court will see clearly that Congress intended that this college should be a State or public, and not a private institution. The first and second sections give to the State the land scrip on which the college is to be founded. The third section provides that the State shall pay all expenses in the management of the monies received from the sale of the scrip. The fourth section provides that the State Legislature shall prescribe the manner in which the prescribed studies shall be conducted. The fifth section provides that the Legislature alone can authorize the expenditure of money in the purchase of sites for experimental farms ; that the State "shall be bound to pay the United States the amount received for any lands previously sold, &c. ; that the State shall make an annual report to the Secretary of the Interior of the progress of the college," including State, industrial and economical statistics. By the eighth section the Governor of the State is required to report annually to Congress the sales of the land scrip and the disposition made of the proceeds.

Under the act of Congress the Legislature could not have made this a private college, even if it had tried to do so. It would have been eminently improper for the State to place this magnificent fund, given to her by Congress, under the control of irresponsible trustees, whom she could not remove, even though she should see that they were wasting the fund. Such an act by her would have been a just cause for the revocation of the grant by Congress. But the State of Florida intended no such act of folly and injustice.

By the seventeenth section of the act of 1870 the Comptroller of the State is authorized to make examination from time to time, as he may see fit, into the actions and doings of said trustees, to the end that he may ascertain whether the proceeds committed to them have been managed accord-

ing to the letter and intent of this act, and the trustees are required to report to the Comptroller annually.

By section 18 of the act of 1870 the trustees are required to report to the State Superintendent of Public Instruction annually all their actions and doings, and said Superintendent is required to lay said report of the Trustees before "the Legislature at the beginning of each regular session."

But why should the report of the trustees be laid before the Legislature, along with the reports of the examinations of the State Comptroller, if the Legislature has surrendered all its power to the trustees, and were to be mere passive spectators of their actions? Evidently it was the intention of the Legislature in thus providing for keeping itself constantly advised of the conduct of the trustees, to keep itself in position to correct abuses by the removal of trustees in proper cases.

The twentieth section of the act of 1870 provides that "the Judges of the Supreme Court of the State shall constitute an examining committee, with power to investigate the affairs of the corporation, and to appoint proxies in their stead."

In private corporations the "*incipiens fundator*" alone appoints visitors and examiners to look into the affairs of his corporation and report to him, in order that he may correct abuses No one else has a right to intermeddle with his corporation; but in a public corporation the State appoints the visitors, such as the Comptroller and the Justices of the Supreme Court in this case, and they report, not to the Trustees, but to the State, the *incipiens fundator* and *percipiens fundator* of this college, in order that the State, through its Legislature, may correct abuses by removing the trustees or amending the charter.

*E. M. Cheney* and *John A. Henderson* for Respondents.

The respondents claim that the Florida State Agricultural College was established by the act approved February 18, 1870, as amended by the act approved February 17, 1872. The Attorney-General denies this, and claims that it was established by the latter act alone. The act approved February 17, 1872, did not, of itself, provide for the establishment of a college. It was simply supplementary to and amendatory of the act approved February 18, 1870, which provided all the details for the organization and management of the college, and it so expressly stated both in the title and in the body of the act. The first act did not take effect until after the passage of the second act, because the corporators therein named failed to accept it. The supplemental act provided new corporators in place of those who declined to act; changed the name of the college from "The Florida Agricultural College" to "The Florida State Agricultural College," and made several other alterations. The two acts then became one act, and, together, formed the charter of the college, which the corporators, named in the supplemental act, accepted, and under which they organized.

*The Act approved March 7, 1877, does not comply with the Requirements of the Constitution of the State.*

Section 14 of Article IV., of the Constitution of Florida, provides as follows:

"SECTION 14. Each law enacted in the Legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title, and no law shall be amended or revised by reference to its title only; but in such case the act as revised, or section as amended, shall be re-enacted and published at length."

The title of the act approved March 7, 1877, is "An act

in relation to the Florida Agricultural College." The sub-ject of the act is not briefly expressed—is not expressed at all—in this title. An act creating a college cannot properly be entitled an act in relation to that college, for the term implies the pre-existence of the thing to which the act re-lates. There was no institution in existence by the name of " The Florida Agricultural College," in relation to which acts could be passed. The act really embraces several sub-jects, none of which are expressed in its title. One subject is, professedly, the amendment of certain sections of the act approved February 17, 1872; but in reality is the creation of a new corporation under a new name. Another subject is the transfer of the property belonging to the Florida State Agricultural College to this new corporation. Another subject is the location of the Florida State Agricultural Col-lege.

Under the common law, the title of an act, or the pream-ble to it, are not, strictly speaking, parts of the act; (1 Kent Com., 509,) but where the Constitution provides that the subject shall be expressed in the title, the title becomes a part of the act. The provision is mandatory, not simply directory; and so much of every statute as contains matter different from what is expressed in the title is void. The Constitution has made the title the exclusive index to the legislative intent as to what shall have operation. Mayor of Savannah vs. State, 4 Geo., 27; 12 Geo., 36 ; Cooley on Const. Lim., 81, 82, 141, 149 ; Sun Mut. Ins. Co. vs. Mayor of N. Y., 8 N. Y., 254½; Connor vs. Mayor of N. Y., 5 N. Y., 293; Davis vs. State, 7 Md., 151 ; State vs. Union, 33 N. J., 354; Hall vs. Bunte, 20 Ind., 304.

The matter of the whole act approved March 7, 1877, is different from what is expressed in its title, and therefore the whole act is void.

The revision or amendment of a law cannot be made by reference to its title only, but the act as revised, or section

as amended, must be re-enacted and published at length. This provision of the Constitution is grossly violated in the act approved March 7, 1877. This act undertakes to amend the act approved February 17, 1872, by reference to its title only. Two sections of this act (which sections were simply amendments to the act of 1870) were re-enacted and published at length, but it then proceeds to add three new sections without specifying what law, if any, these sections were intended to amend. These sections, if they have any operation at all, operate to amend or alter various provisions in the act of February 18, 1870, (which is not referred to, even by its title only;) section 4, for instance, being a virtual amendment or revision of section 7 of the act of 1870, and also of section 4 of the act of 1872. The act of March 7, 1877, is not a complete act in itself; for it has no force or meaning, except as taken in connection with and made a part of both the act of February 18, 1870, and the supplementary act of February 17, 1872. It is not, properly, an amendment to the act of 1872, for that act is only an amendment to the act of 1870, but it is in substance a revision of the act of 1870, as amended by the act of 1872, and these acts as revised by the act of 1877, should have been re-enacted and published at length.

The provision in the Constitution prescribing how an act shall be amended or revised is mandatory, and any departure from the prescribed mode is fatal to the validity of the amendment or revision. Cooley's Const. Lim., 81, 82; 12 Geo., 36; State vs. Ingersoll, 17 Wis., 631; Heirs of Duverge vs. Salter, 5 La. An., 94; Rogers vs. State, 6 Ind., 31; State vs. Draper, 47 Mo., 288; Weaver vs. Lapsley, 43 Ala., 224; 28 Ind., 382.

*The Act approved March 7, 1877, is in Violation of the Constitution of the State and of the United States.*

Section 10 of Article I. of the Constitution of the United

States provides that no State shall pass any "*ex post facto* law, or law impairing the obligation of contracts." Section 16, Declaration of Rights, Const. of Fla.

The act approved March 7, 1877, impairs the obligation of contracts. 10 Fla., 130.

If the Florida State Agricultural College is a public corporation, then the charter granted to it by the State does not constitute a contract between the corporators and the State, and the Legislature has full control over it. If, however, the college is a private corporation, even though created for a public purpose, its charter constitutes a contract, and is protected from violation or alteration, without its consent, by the Constitution of the United States. The respondents claim that the Florida State Agricultural College is a private corporation.

Public corporations are thus defined :

" Public corporations are such as are created by the government for political purposes, as counties, cities, towns, and villages; they are invested with subordinate legislative powers to be exercised for local purposes connected with the public good, and such powers are subject to the control of the Legislature of the State." 2 Kent's Com., 309.

" Another division of corporations is into public and private. Public corporations are generally esteemed such as exist for public politic purposes only, such as towns, cities, parishes, and counties." Story, J., Dartmouth College vs. Woodward, 4 Wheat., 518.

"When then the argument assumes that because the charity is public the corporation is public, it manifestly confounds the popular with the strictly legal sense of the terms. * * When the corporation is said at the bar to be public, it is not merely meant that the whole community may be proper objects of its bounty; but that the government have the whole right, as trustees of the public interest, to regulate, control, and direct its funds and franchises at

its own good will and pleasure. Now, such an authority does not exist in the government except where the corporation is, in its strictest sense, public; that is, where its whole interests and franchises are the exclusive property and domain of the government itself." Ibid.

"If the act of incorporation be a grant of political power; if it creates a civil institution to be employed in the administration of the government; or, if the funds of the college be public property; or, if the State of New Hampshire, as a government, be alone interested in tis transactions, the subject is one in which the Legislature of the State may act according to its own judgment, unrestrained by any limitation of its power imposed by the Constitution of the United States." Ibid. Opinion of Marshall, C. J.

None of these definitions will apply to the Florida State Agricultural College.

It is not a county, town, village, city, or parish.

Its charter contains no grant of political power.

It is not in any manner employed in the administration of the government.

Its funds are not public property; for they were donated by the United States and by individuals, to be used for a particular purpose in a particular manner.

No portion of its interests and franchises are either directly or indirectly the property or domain of the State.

A private eleemosynary corporation is defined as follows:

"An eleemosynary corporation is a private charity constituted for the perpetual distribution of the alms and bounty of the founder. In this class are ranked hospitals for the relief of poor, sick and impotent persons, and colleges and academies for the promotion of learning and piety, and endowed with property by public and private donations." 2 Kent's Com., 308, and references; Dartmouth College vs. Woodward, 4 Wheat., 518; 9 Gill & John., 365.

" The authorities are full to prove that a college is a private charity as well as a hospital, and that there is, in reality, no difference between them except in degree; but they are within the same reason and both eleemosynary." Dartmouth College vs. Woodward, 4 Wheat.

" A corporation is private as distinguished from public, unless the whole interest belongs to the government, and it be created for the administration of political or municipal powers." Rundle vs. Delaware and Raritan Canal, 1 Wall., Jr., 275.

" A private eleemosynary corporation is an institution endowed with a capacity to take property for objects unconnected with government, whose funds are bestowed by individuals on the faith of the charter, and where the donors have stipulated for the future disposition and management of these funds in the manner prescribed by them." Marshall, C. J., in Dartmouth College vs. Woodward.

All of these definitions apply to the Florida State Agricultural College.

It is an eleemosynary corporation, constituted for the distribution of the free alms and bounty of the founder, in such manner as that founder has directed.

It is a college for the promotion of learning, and is endowed with property by public and private donations.

The whole interest does not belong to the government, and it was not created for the administration of political or municipal power.

Its funds were bestowed by individuals (for the United States Government, so far as the State is concerned, is an individual,) on the strength of the charter, and the donors stipulated for the future disposition and management of these funds in a manner prescribed by themselves.

The fact that the Florida State Agricultural College was endowed originally by the United States Government from the public lands, does not affect the character of the corpora—

## JUNE TERM, 1878. 605

State ex rel. Attorney-General v. Knowles et als.—Argument of Counsel.

tion. A public foundation does not make the corporation public; nor would it have done so, even though the endowment had been made by the State itself from the public lands or funds belonging to the State. This point is definitely settled by judicial decisions. 3 Geo., 283; Dart. vs. Houston, 22 Geo., 530; Allen vs. McLean, 1 Sumner, 276; 14 Allen, 532; 5 Allen, 66; 57 Maine, 527; 2 Perry on Trusts, 742; Dartmouth College vs. Woodward, 4 Wheat., 518; St. Johns College vs. State, 15 Md., 330; Brown vs. Hummel, 6 Penn. St., 86; State vs. Adams, 4 Mo., 570. Nor can the trustees be changed. Harvard College vs. Soc. for promotion Theo. Ed., 3 Gray, 280; Attorney-General vs. Hartley, 2 J. & W., 382; Attorney-General vs. Mansfield, 2 Russ., 520; Stone vs. Framingham, 109 Mass., 303; Attorney-General vs. College of Wm. and Mary, 1 Vesey, Jr., 243; 1 Black. Com., 469-482; 1 Kyd. Corp., 25; Attorney-General vs. Whorwood, 1 Ves., 534; St. Johns College vs. Todington, 1 Bl. Rep., 84; Philips vs. Bury, 1 Ld. Raym., 5; Allen vs. McLean, 1 Sumner, 276; Dartmouth College vs. Woodward, 4 Wheat., 518.

The Florida State Agricultural College being a private eleemosynary corporation, the charter granted to it by the Legislature of Florida by the act of February 18, 1870, as amended by the act of February 17, 1872, is a contract within that clause of the Constitution of the United States which declares that no State shall make any law impairing the obligation of contracts, and any subsequent act of the Legislature altering this charter without the consent of the corporation, is an act impairing the obligation of the charter and is unconstitutional and void.

"A grant of incorporation is, in fact, in the nature of a contract between the government and its subjects, the latter of whom undertakes in consideration of the privileges bestowed, to do what the government is interested in having done." Angell & Ames on Corp., 47; King vs. Passa-

more, 3 T. R., 246 ; 4 Peters, 562 ; Fletcher vs. Peck, 6 Cranch, 37 ; Cooley Const. Lim. 279, n. 2. " A legislative grant is not revocable." 9 Cranch, 256 ; 75 L. R., 562 ; 1 Blk. Com., 471 ; 4 Wheat., 518 ; 1 Sumner, 276 ; 4 Wheat., 564.

But even if the Legislature had reserved the right to alter or amend the charter of the Florida State Agricultural College, this reservation would not have authorized it to change the trustees.

" A reservation in a charter for the Legislature to alter, repeal or amend, does not imply the power to change the vested rights acquired by the corporators under the charter, or to add new parties and managers without the consent of the corporators." 15 B. Munroe, (Ky.,) 340.

" In the charter of the college it is declared that the Legislature ' may grant further powers to, or alter, limit, annul or restrain any of the powers by this act vested in the said corporation as shall be judged necessary to promote the best interests of the college.' Under this clause the authority of the Legislature is confined to the enlarging, altering, annulling or restraining of the powers of the corporation, and does not extend to any intermeddling with its property, or extinction of its corporate existence." Allen vs. McLean, 1 Sumner, 276.

The obligation of the contract made between the trustees of the college and W. H. Gleason is also impaired by the act approved March 7, 1877. This contract was that Mr. Gleason should donate a large tract of land to the college, and in consideration of this donation, the college should be permanently located at Eau Gallie. The land was conveyed to the trustees, and the permanent location of the college was fixed by the trustees at Eau Gallie, where a college building was subsequently erected. The act of March 7, 1877, authorizes the trustees therein named to remove the college from Eau Gallie to some other place, thus utterly

ignoring and deliberately violating the contract made with Mr. Gleason. A law, then, which authorizes the removal of the college without the consent of the donor of these lands, is a law impairing the obligation of a contract, and is within the prohibition of the Constitution of the United States.

*The Legislature, in Passing the Act of March 7, 1877 Exceeded its Power.*

The Florida State Agricultural College is a private eleemosynary corporation, incorporated by the Legislature of Florida on the strength of an endowment promised by the United States Government. The endowment, though granted to the State in terms, was not intended for the use of the State, nor to be subject to the control of the State, for the manner in which it was to be invested, and the uses to which it was to be applied, were expressly stated in the grant. It was, by the terms of the grant, to be given to at least one Agricultural College, to be established by the State within a specified time. The State was made a trustee, (1 Perry on Trusts, 41,) and was to be. held responsible for the faithful execution of the trust and the safe-keeping of the fund. A State can only execute a trust through officers or corporations created by the Legislature for that purpose, and the State, therefore, created this corporation to manage the fund and control the college. In granting the charter it might have reserved to itself the power to change the trustees, but it did not do so, and consequently the corporators named in the charter acquired a permanent right to their character as trustees, which could only be divested in the manner pointed out in the charter.

In point of fact, however, the State never became even a trustee; for, having failed to comply with the conditions of the grant, the United States refused to deliver to it the scrip,

and, without such delivery, the grant did not take effect.   1 Perry on Trusts, Sec. 100.

The Florida State Agricultural College being, then, an existing corporation, capable of taking and holding property for the purposes specified in its charter, Congress ignored the State and made a new grant, followed by actual delivery of the scrip to this college.   The result is that the State is absolved from any responsibility relative to the fund, or from any obligation to keep it undiminished, and the college holds and manages the fund, subject only to the limitations and conditions prescribed in its charter, and not subject to any control on the part of the State.

The Constitution of Florida provides that " no person shall be deprived of life, liberty or property without due process of law ; nor shall private property be taken without just compensation."   Declaration of Rights, Sec. 8.

A corporation is a person, and the rights, privileges and franchises of a body corporate and politic are as much "property" as are real and personal estate.   Blackstone, after enumerating other liberties and franchises, says : " It is likewise a franchise for a number of persons to be incorporated and subsist as a body politic, with a power to maintain perpetual succession and do other corporate acts ; and each individual member of such corporation is also said to have a franchise or liberty."   2 Black. Com., 37.

The property belonging to the college is also the property of the trustees.   It is true they hold it in trust for certain purposes, but the legal estate is theirs, and this legal estate is as much an object of legal protection as any other estate. But whatever may be the title of the trustees, this property certainly is not the property of the State.   It was given directly to the trustees by the United States Government and by individuals ; it never was, either directly or indirectly, the property of the State, nor in its possession, nor subject

to its control; nor has the State ever expended a single dollar towards endowing or maintaining the college.

The act of March 7, 1877, then, deprives the respondents of their property in the rights, privileges and franchises belonging to them as trustees of the Florida State Agricultural College without due process of law, and it takes away from them private property, the property of a private corporation, in which they have a legal estate, without just compensation. It is, therefore, unconstitutional and void.

MR. JUSTICE WESTCOTT delivered the opinion of the court.

The respondents, who claim to be a body corporate and politic under the name of the "Florida State Agricultural College," are here called upon and required by the State of Florida, upon the relation of the Attorney-General, to show by what title, right and authority they claim to exercise the franchise to be a corporation for the purpose of teaching such branches of learning as relate to the mechanical arts and agriculture, and generally to exercise the powers of a corporation, to sue and be sued, &c.

It is unnecessary to state at length the pleadings in this case. There are two leading questions presented in argument as arising under the proper construction of the pleadings, and to these we address ourselves.

The first is the constitutionality of the act approved March 7, 1877, entitled "An act in relation to the Florida Agricultural College," viewed in reference to the limitations of the power of the Legislature in the State Constitution as to the enactment of statutes; and the second is the constitutionality of the same act, when viewed in reference to limitations upon the power of a State, in the Constitution of the United States.

These questions arise from the nature of the legislation in reference to the "Florida Agricultural College," and are

39

embraced, so far as the State Legislature is concerned, in three acts. These acts, giving a condensed statement of their provisions, are as follows:

Chapter 1766, of the Laws of Florida, is an act to establish the Florida Agricultural College. The first section of the act established the college. The second section announces its design and purpose. The third section constitutes certain persons a body corporate, by the name of the Trustees of the Florida Agricultural College, investing them with the general powers of a corporation, and with right to use a corporate seal. The fourth section gives the power of removal from office, as well as the power of filling vacancies in office. The 5th section provides for the election of an executive committee with named powers. The 6th provides for their compensation. The 7th, 8th and 9th relate to the agricultural land scrip, which the State is entitled to under the act of Congress of July 2, 1862, the investment of the proceeds of the sale thereof and application of the interest. The 10th provides for the location of the college. The 11th makes the expense incurred in procuring and selling the scrip a charge against the State. The 12th authorizes an investment of the money in State bonds. The 13th gives the trustees power to name a president of the college and professors, and for their compensation. The 14th provides for the faculty. The 15th prescribes their duties. The 16th provides that each county may send one student for each member of the Assembly. The 17th gives the Comptroller authority to examine the acts of the trustees, and makes it their duty to report to him. The 18th requires the trustees to report to the Superintendent of Public Instruction. The 19th authorizes the Legislature to add other departments of learning. The 20th provides that the Justices of the Supreme Court shall constitute an examining committee to inquire into the affairs of the college.

Chapter 1905, of the Laws of Florida, is " An act supple-

mentary to Chapter 1766 of the session laws of 1870, being an act to establish the Florida Agricultural College." The 1st section of this act repeals sections 3 and 5 of Chapter 1766. Section 3 of Chapter 1766 named the trustees and established them a body corporate, with right to use a corporate seal and have succession. Section 5 of that chapter provided for their first meeting, for the election of officers and an executive committee and fixed their powers. Sections 2 and 3 of the supplementary act are plainly in lieu of sections 3 and 5 of the first act thus repealed. These sections of the supplementary act named certain persons as corporators under the name of the "Florida State Agricultural College," giving them corporate powers and defining their duties and powers, and it is under *these sections* that respondents claim title. The necessary conclusion is, that the two sections, 2 and 3 of the supplementary act, were in lieu of sections 3 and 5 of the first act. Section 4 of the last act gives them power to construst college buildings, to sue and be sued, and to receive donations. Section 5 gives each State Senator the right to nominate a student, who shall be entitled to receive instruction at the college.

Chapter 3045, of the Laws of Florida, is "An act in relation to the Florida Agricultural College." The 1st section enacts that section 2 of "An act supplementary to Chapter 1766 of the session laws of 1870, being an act to establish the Florida Agricultural College," be amended so as to read as follows :

"The Superintendent of Public Instruction and the Treasurer of the State of Florida, by virtue of their offices as such, and J. Wofford Tucker, David S. Walker, J. H. Roper, James M. Baker, C. H. Smith, F. Branch, W. D. Barnes, their successors, are hereby constituted a body corporate and politic by the name of the 'Florida Agricultural College,' and are entrusted with the general powers of a corporation for the benefit of causing to be taught such

branches of learning pertaining to agriculture and the mechanic arts, military tactics, and other scientific and classical studies, in order to promote the liberal and practical education of the industrial classes in the several pursuits and professions of life, and said corporation shall have perpetual succession, as is provided in the original act incorporating said college, and the right to use a corporate seal."

The 2d section provides "that section 3 of said Chapter 1905 be amended so as to read as follows." Then follows the substituted section, making the Superintendent of Public Instruction and State Treasurer ex-officio President and and Treasurer of the Board of Trustees. It also provides for an executive committee.

The 3d section authorizes the Treasurer to receive the property belonging to the board; the 4th gives the trustees power to remove the college from its present location, and the 5th is the usual repealing clause.

The clause of the State Constitution, to which this last act is claimed to be obnoxious, is as follows: "Each law enacted in the Legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title, and no law shall be amended or revised by reference to its title only; but in such case the act as revised, or section as amended, shall be re-enacted and published at length."

The first objection to the act approved March 7, 1877, which we consider, is that it undertakes to amend the act of February 17, 1872, by reference to its title only. This, in point of fact, is a mistake. The amending act not only refers to the title of the act being amended, but it also refers to the chapter of the act being amended, and the sections as amended are re-enacted and published at length.

The only authority under which the respondents claim to hold and exercise their franchises is the second section of.

the act of February 17, 1872. This the act of 1877 repeals in express terms, and in a 'manner complying with the constitutional requirements as to the method of amendment.

The next objection is that " the subject of the act is not briefly expressed, is not expressed at all in the title; that an act creating a college cannot properly be entitled an act in relation to that college, for the term implies the pre-exist- ence of the thing to which the act relates. There was no institution in existence by the name of ' *The Florida Agricultural College*,' in relation to which acts could be passed. The act really embraces several subjects; none of which are expressed in its title. One subject is professedly the amendment of certain sections of the act approved February 17, 1872, but in reality is the creation of a new corporation under a new name. Another subject is the transfer of the property belonging to the Florida State Agricultural College to this corporation. Another subject is the location of the Florida State Agricultural College." There is nothing in the objection that the Legislature cannot establish a college or corporation because it is not in existence already. On the contrary, the very fact that it does not exist is the cause and reason for legislative action to bring it into existence. If it existed before, there is no necessity for legislation bringing it into existence; nor is there any objection to proper legislation in respect to it when it does exist. Where is there any limitation upon the power of the Legislature in this respect? There is none. The creation of new corporations and the changing of the names of public corporations, are admitted powers of this branch of the government. The title of this act relates to the "Florida Agricultural College," and the provisions of the law following embrace nothing but the subject of the "Florida Agricultural College" and matter properly connected therewith. Every section of this law, when examined, will be found to refer to that

subject alone. This title indicates the one general subject.

It is not necessary to state in detail in the title the matters embraced in the body of the statute connected with that subject. The act is properly entitled in relation to the Florida Agricultural College. If the body of the act relates to that one subject, and if the Florida State Agricultural College is matter properly connected with the Florida Agricultural College, as created by the act and in view of its general purposes looking to its particular provisions, that is enough. I do not think, looking to the authorities upon this subject, that there is any sanction for the idea that an act in relation to a new corporation is not a sufficient statement of the subject of an act which, in its body, changes the name of an existing corporation to the new name stated in the title.

While the provision in the Constitution is mandatory, still "there has been a general disposition in the courts of this and other States to construe it liberally rather than embarrass legislation by a construction where strictness is unnecessary to the accomplishment of the beneficial purposes for which it was adopted." Gibson vs. The State, 16 Fla. ; Cool. Con. Lim., 146.

As is said by the Supreme Court of Wisconsin, (20 Wis., 411,) " the subjects of legislation are usually expressed with the utmost brevity and conciseness in their titles, and some consideration must be given to this circumstance in determining the question. The court is not to set aside or declare an act void because the subject was not as fully or as unequivocally expressed as it might otherwise have been. A liberal rule of interpretation must prevail in this respect, not only for the reason just stated, but because the proposition is to strike down and defeat the act of the Legislature, which can never be done upon any slight or untenable grounds. It is a truth which has been often asserted and often acted

upon by the courts, that to justify the annulling of a statute by judicial sentence, the violation of the Constitution must be clear and unmistakable." Considering, therefore, that the statement of the subject is always concise, I cannot see how it can be contended that each and every section of this act does not relate to the Florida Agricultural College. This section of the Constitution relates to the exercise of legislative power by the legislative department of the government, and for this reason, among others, some of the State courts have held that it is directory. While we cannot agree with this conclusion, still we do say that the conflict must be clear before any act of the Legislature is to be declared by us unconstitutional for non-compliance with requirements as to the method of enactment.

It is insisted further that the two other remaining sections of the act of 1877 amend some part of the antecedent statutes of 1870 and 1872.

Upon an examination of these sections it will be found that their effect is to give the new corporation additional powers.

The trustees having been changed by the first section of the act, section three gives the new treasurer power to receive and send for all property belonging to the board, and the fourth section gives the new trustees power to remove the college from its present site.

It is insisted further that the act of 1877 is a revision of the acts of 1870 and 1872. An act cannot be said to be an act revising two other acts, unless it is apparent and clear that the provisions of the new act are to be in lieu of the preceding acts. Because the provisions of this act affect some older law on the same subject by adding in one section to the power of the treasurer, and in another giving additional power to the board, it cannot be said to be an act revising the antecedent act. So far as this act is amendatory in its character, it complies with the constitutional limitation, and

the other sections are original and not revisory legislation in the sense of that word as used in the Constitution.

Every act containing different provisions upon a matter which has been already the subject of legislation cannot be called a revisory act. 40 Ala., 77; 41 Ala., 18; 13 Mich., 497.

The next general proposition as to this statute is that it impairs the obligation of a contract. The statute changes the trustees of this college. It substitutes the trustees named in the act of 1877 for those named in the act of 1872, as the act of 1872 substituted those named in it for those mentioned in the act of 1870. The ground upon which this view is based is that this is a private not a public corporation. The corporation is itself founded by the State through property derived from the government of the United States. These trustees are made by this legislation the agents of the State to collect and disburse property appropriated by the General Government to the State for a public purpose.

There is not and never was any private property in the trustees in the funds. They were derived from the government. The founder of this institution was the government of the State of Florida, and the property which constituted its basis was public moneys of the State of Florida derived by it from the government of the United States in trust for the establishment of an institution of this character.

It never was the purpose of the State of Florida to give these trustees any private right to this property. Throughout the whole legislation they are shown to be simple public agents to manage a public property. The only right they have to it is by the legislation of the State, and every section of these acts shows that it was founded by public funds and for a public purpose. 5 Stew. & Port., 23; 4 Wheat., 518.

It may be true that any legislation of the State appropri-

ating these funds to any other purpose than that public purpose named in the act of Congress, might have been in bad faith, but that is a matter which does not concern these trustees, nor does this fact change the nature of the institution.

It is insisted that the obligation of a contract with W. H. Gleason is impaired by the act of 1877, in that it directs a removal of the college. This question is entirely independent of the question raised in this case, which is the right of the trustees to hold and exercise a public trust against the provisions of a statute naming other persons trustees in their stead. Because they may have made a contract with some one else cannot extend their powers or rights.

The question whether a city or town has made a contract with A. B. or C. is entirely distinct from the question whether the Legislature may not change the affairs of a public municipal corporation.

What has been said disposes of the further objection, on the ground that these respondents are deprived of their property without due process of law.

Holding their franchises subject to legislative action, legislation depriving them of them is due process of law.

Judgment of ouster is awarded.