THE BOARD OF TRADE OF THE CITY OF CHICAGO *et al.* Appellants, *vs.* W. SCOTT COWEN *et al.* Appellees.

*Opinion filed December 21, 1911.*

1. GRAIN INSPECTION—*expense of grain inspection is a proper charge upon funds of the State.* The constitution imposes upon the legislature the duty of passing laws for the inspection of grain, and such an inspection is the exercise of the police power, and the expense thereof is a proper charge upon the funds of the State.

2. SAME—*fees for grain inspection belong to the State.* The fees paid for grain inspection do not belong to the chief grain inspector and deputy inspectors, for while they are paid compensation for service rendered, the service is the service of the State and the fees received belong to the State.

3. SAME—*grain inspection department is part of the State government.* The grain inspection department of the State is a part of the State government and its receipts are a part of the public money of the State.

4. SAME—*fact that grain inspection fees must be kept in special fund does not make them any the less public money.* Even though it may be that grain inspection fees can be used only for the purpose of paying the expenses of the grain inspection department and that they must be kept in a separate fund, still they belong to the State, and can only be paid out in accordance with the laws governing the expenditure of the money of the State.

5. SAME—*act of 1911, requiring public money to be paid into State treasury, applies to grain inspection fees.* The act of 1911, (Laws of 1911, p. 429,) requiring fees received by certain officers, boards and commissions to be paid into the State treasury and to be thereafter withdrawn only upon the warrant of the Auditor of Public Accounts pursuant to legislative appropriation, applies to grain inspection fees, notwithstanding the act of 1871 provides for their disbursement without any legislative appropriation. (*People v. Harper,* 91 Ill. 357, explained.)

6. CONSTITUTIONAL LAW—*act of 1911, requiring public moneys to be paid into State treasury, is valid.* The act of 1911, (Laws of 1911, p. 429,) requiring fees received by the officers, boards and commissions therein named to be paid into the State treasury and thereafter drawn out only on the State Auditor's warrant pursuant to legislative appropriation, is not invalid as applied to grain inspection fees, as the act is merely declaratory of a duty which has existed ever since the Grain Inspection law was enacted.

7. SAME—*title of act need not mention acts indirectly affected by it.* Where an act does not purport to be an amendatory act and only indirectly affects any other statute, it is not necessary that the title of such act shall mention any of the statutes which will be indirectly affected by it.

8. SAME—*fact that amount appropriated for grain inspection is insufficient does not render act of 1911 invalid.* The fact that the amount appropriated by the legislature for the expenses of the grain inspection department may not be sufficient to enable the department to render as complete service as is required, and that the efficiency of the Grain Inspection law is thereby impaired, does not render unconstitutional the act of 1911, requiring grain inspection fees to be paid into the State treasury and withdrawn only in pursuance of legislative appropriation.

APPEAL from the Superior Court of Cook county; the Hon. WILLIAM E. DEVER, Judge, presiding.

HENRY S. ROBBINS, (MARTIN H. FOSS, of counsel,) for appellants.

W. H. STEAD, Attorney General, and FRED H. HAND, (HIRAM T. GILBERT, of counsel,) for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The Board of Trade of the city of Chicago, and a number of other complainants, corporations, partnerships and individuals engaged in buying, selling and shipping grain, filed a bill in the superior court of Cook county against the chief inspector of grain of the State, the railroad and warehouse commissioners, the State Treasurer and Auditor, for an injunction to prevent the payment into the State treas-

ury of a fund of $64,560.37 arising from grain inspection fees, or any other money received from that source, especially in Cook county, and to enjoin the grain inspector from ceasing to maintain an adequate grain inspection service, to inspect all grain tendered to him for inspection in the city of Chicago, and to apply said sum of $64,560.37, and all other grain inspection fees, to the payment of the expenses of such inspection. A demurrer to the bill was sustained, the bill was dismissed for want of equity, and the complainants have appealed.

An act of the General Assembly which went into force on July 1, 1911, specifically required all fees received by the chief inspector of grain and all deputy inspectors, for or on behalf of the State, as well as all fees so received by a large number of other officers, boards and commissioners of the State, to be paid into the State treasury, and forbade the expenditure of any part of such fees for any purpose except upon the warrant of the Auditor of Public Accounts, based upon an appropriation by the General Assembly. All money arising from such fees in the possession, at the time the act took effect, of any of the officers, boards or commissioners mentioned in the act, was required to be paid into the State treasury within thirty days thereafter. (Laws of 1911, p. 429.) The bill attacks the constitutionality of this act, and the complainants also insist that under a proper construction it does not include fees from grain inspection service.

The office of chief inspector of grain was created by the General Assembly in 1871, and it was made his duty to have general supervision of the inspection of grain under any law of the State, under the advice and direction of the railroad and warehouse commissioners, who were authorized to make rules for the inspection of grain and to fix the rate of charges for such inspection and the manner of collection, so as, in the judgment of the commissioners, to meet the necessary expenses of the service of inspection,

and to fix the compensation of the chief inspectors, deputy inspectors and all other persons employed in the inspection service. All necessary expenses of the inspection service were required to be paid from the funds collected for inspection. (Hurd's Stat. 1909, par. 146, p. 1766.) The appellants insist that under this law the fees for inspection were not received "for or on behalf of the State." They say that "all such expenses shall be paid from the fees,— none is to be paid out of the State treasury." But the question is whether the fees belong in the State treasury. If they do, then the expenses of inspection are paid by the State even though they are paid from the fees. The appellants' counsel agree with the Attorney General that if the fees belong to the State, they are, in view of section 7 of chapter 130 of the Revised Statutes, in legal contemplation in the custody of the State Treasurer though they never came to his actual possession, and it follows, by virtue of section 17 of article 4 of the constitution, that they cannot be drawn from the treasury for the payment of the expenses of grain inspection, or for any other purpose, except in pursuance of an appropriation made by law and on the presentation of an Auditor's warrant.

Section 7 of article 13 of the constitution imposes upon the General Assembly the duty of passing laws for the inspection of grain, for the protection of producers, shippers and receivers of grain and produce. This duty was met by the enactment of the law cited above, which was held in *People* v. *Harper,* 91 Ill. 357, to be a constitutional exercise of the legislative power. The inspection of grain is an exercise of the police power and the expense of it is a proper charge upon the funds of the State. It will not be contended that it would have been improper for the legislature to have fixed in the statute the salaries of the chief inspector, deputy inspectors and other employees engaged in the inspection of grain, and appropriated money for the payment of such salaries and the other expenses at-

tending the grain inspection service from the general funds of the State treasury. Neither would it have been improper to have fixed the fees for inspection and required their payment into the treasury. The only reason these things would not have been improper is, that the business of grain inspection is that of the State. The State renders the service and is entitled to receive compensation from those for whose benefit, presumably, it is rendered, as held in *People* v. *Harper, supra.* The chief inspector and deputy inspectors are officers of the State, and the fees paid for inspection are in no sense their property. They are paid as a compensation for service rendered, but the service is that of the State, rendered through its agents. The inspector and deputy inspectors cannot appropriate the fees, which are intended to pay not only the compensation of the inspector and deputy inspectors, but all of the expenses of the grain inspection department. That department is a part of the State government, and its receipts are as much a part of the public money as are those of the Secretary of State. Even though it be held that they must be kept as a separate fund and can be devoted to no other purpose than the payment of the expenses of grain inspection, still they belong to the State and are under its control for the payment of such expenses of the State, in accordance with the laws governing the expenditure of the money of the State. The common school funds cannot be applied to any other use than the support of schools, and yet it can hardly be said that they are not moneys of the State. Public money is none the less public money of the State because devoted to a special purpose or a special department of the State's service.

The serviceable doctrine of contemporaneous legislative construction, which is usually resorted to in cases of long continued, palpable disregard of constitutional limitation, is invoked here, and it is also pressed upon us that to hold the grain inspection fees public money of the State, which

can only be drawn from the treasury in pursuance of an appropriation made by law, we must overrule *People* v. *Harper, supra,* which held the Inspection law of 1871 constitutional, though it provided that the fees should be disbursed without any appropriation act. This feature of the statute was not considered in that case. The payment of the expenses of grain inspection by the railroad and warehouse commissioners out of the fund created from fees received for inspection was a matter which the legislature could not have considered of any particular importance. The intention was to make the service self-sustaining. The important matter was the creation of the fund, and not who should disburse it. It could as well be done through an appropriation act as through the railroad and warehouse commissioners. The provision in regard to disbursement by the latter was not so material as to require that all the legislation in regard to grain inspection should be held unconstitutional, but it was itself so manifestly contrary to the constitution that length of time could not make it valid.

It is urged that the act in question violates section 13 of article 4 of the constitution. Its title is, "An act in relation to the payment of the public money of the State into the State treasury." It is insisted that to apply the act to grain inspection fees is to apply it to what is not, under existing laws, "public money of the State" and is not within the title. What has been already said answers this position.

It is further insisted that in addition to providing for the payment of public money into the State treasury, the act, if applied to grain inspection fees, also amends existing grain inspection laws,—a subject not included within the title. The act does not purport to be an amendatory act. It only indirectly affects any other statute, and it is not necessary that the title of such an act shall mention any other statute which may be indirectly affected by it. In fact, however, the act requiring the payment of fees into

the State treasury is only declaratory of a duty which has existed ever since the Grain Inspection law was enacted.

Other objections to the constitutionality of the act are based on the propositions that it impairs the efficiency of the present Grain Inspection law because the same legislature which passed it made insufficient provision in its appropriations for the expenses of an adequate inspection of grain throughout the State; that it deprives the cities of Decatur, Joliet and Kankakee of all inspection because no appropriation has been made for the expenses of inspection in those cities, and that it will deprive some of the grain dealers in Chicago of the right to put their grain into elevators because a sufficient number of inspectors has not been provided and the owners will therefore be unable to have their grain inspected as required by law. For these reasons it is urged that the act violates the constitutional requirement for the passage of laws for the inspection of grain. These propositions have no legal foundation. The allegations of the bill as to this part of the case are, substantially, that the legislature which passed this act made insufficient appropriations for the expenses of the inspection department, and that the amounts appropriated are wholly inadequate to maintain such inspection department and continue such inspection service. Detailed statements are made, which are not necessary to be stated here, as to the amount of grain shipped to and from Chicago for a number of years, and its inspection as it went into and out of the elevators, the number of inspectors and their salaries, and the other expenses of the inspection department,—all for the purpose of showing the inadequacy of the appropriation made by the last General Assembly. But all together are of no importance here. A court cannot determine the amount which a legislature ought to appropriate for any purpose. An act cannot be constitutional or unconstitutional according to the amount of money appropriated by another act. We have held that, independent of

the act in question, these fees cannot be paid out except in pursuance of an appropriation and on the warrant of the Auditor. If this proposition is correct, then none of the reasons urged by the appellants for applying them to the expenses of grain inspection in some other way have any force.

We have not discussed the jurisdiction of a court of equity to take cognizance of the bill and it is not to be understood that we recognize such jurisdiction. The bill is without equity and the demurrer to it was properly sustained.

<em>Decree affirmed.</em>