## *Ex Parte* C. H. TAYLOR.

## Opinion Filed July 8, 1914.

1. The title of Chapter 6422 Acts of 1913, is not so defective or misleading as to render the Act unconstitutional.

2. The authorized acts of the Comptroller and Attorney General under Chapter 6422 Laws of 1913 are administrative and not judicial.

3. Chapter 6422 Acts of 1913 contemplates an adequate hearing and does not deprive a local corporation of its property rights without due process of law, nor does it arbitrarily discriminate against a local corporation so as to deny to it the equal protection of the laws.

Original proceedings in Habeas Corpus.

Petitioner remanded.

*Thos. B. Adams* and *F. M. Durrance,* for Petitioner;

*T. F. West,* Attorney General, for the State.

PER CURIUM.—The Petitioner, C. H. Taylor, presented a petition to a Justice of this Court in which it is alleged "that he is unlawfully imprisoned, detained, confined and restrained of his liberty by" the Sheriff of Leon County, Florida, under a warrant charging that petitioner "did attempt to sell and offer for sale two shares of the capital stock of a domestic corporation, to-wit: Exposition Motor Chair Company, a corporation organized under the laws of the State of Florida, to one G. S. Johnson, Jr., in Leon County, Florida, which is outside of Duval County, Florida, where said corporation has its principal office and

place of business, which corporation is other than a municipal corporation, State bank, National bank, trust company, public utility corporation, corporations under the jurisdiction of the railroad commissioners of the State of Florida, and which corporation is organized for profit, before said corporation had complied with the provisions of Chapter 6422 Acts of 1913, Laws of Florida, contrary to the statute. The petition alleges that the detention is unlawful because the statute is unconstitutional in stated particulars. The Judge of the Circuit Court for Leon County being ill, a writ of *habeas corpus* issued returnable before the Supereme Court. On the return made·by the Sheriff showing the detention as alleged, the petitioner moved to be discharged.

Chapter 6422, Acts of 1913, asserted to be unconstitutional, is as follows:

### "Chapter 6422 (No. 2).

AN ACT to Define Domestic and Foreign Investment Companies; to provide for the Regulation and Supervision of Same; to Provide Conditions and Terms Under Which Corporations, Foreign and Domestic, Can Sell to Persons in Florida Stock and Other Securities; to Place Such Investment Companies Under the Jurisdiction of the Comptroller and Attorney General, and to Prescribe for the Comptroller and Attorney General Certain Duties and Powers; to Provide for the Service of Process Thereon; to Provide for the Registration of Agents Selling Securities of Such Investment Companies, and to Provide Penalties for the Violations of the Terms of This Act, and for Other Purposes.

*Be It Enacted.by the Legislature of the State of Florida:*

Section 1. That every Corporation, other than munici

pal Corporations, State and National Banks, Trust Companies, Public Utility Corporations, Corporations under the jurisdiction of the Railroad Commission of the State of Florida, and Corporations not organized for profit, which are now organized or which may be organized in this State, which shall offer for sale within the State of Florida, and outside of the County where such Corporation has its principal office or place of business through any Agency whatsoever, any of its stocks, bonds, debentures, certificates, policies or other securities of any kind or character shall be known for the purposes of this Act as a Domestic Investment Company. Any Corporation organized under the laws of any other State, Territory or Country shall be known for the purposes of this Act as a 'Foreign Investment Company.'

Sec. 2. Before attempting to sell or offering for sale any stocks, bonds or other securities of any kind or char acter to any person or persons within this State, every such Investment Company, Domestic or Foreign, shall file in the office of the Comptroller of the State of Florida, together with a filing fee of five Dollars, the following documents, to-wit:

A statement showing in full detail the plan upon which it proposes to transact business; a copy of all contracts, bonds, stocks or other instruments which it proposes to make with or sell to its contractors; a statement which shall show the name and location of the Investment Company; an itemized account of its actual financial standing, showing the amount, character and location of its property and its liabilities; and such other information touching its affairs as said Comptroller may require. It shall also file with the Comptroller a copy of its Articles of Incorporation, Constitution and By-Laws and all other papers pertaining to its organization, all of which above

papers and documents shall be verified by the oath of the President of such Corporation, or by some duly authorized officer of same.

Sec. 3.   Every such Foreign Investment Company shall also file with the Comptroller its written consent, irrevocable, that actions may be commenced against it in the proper Court of any County in this State in which a cause of action may arise, or in which the plaitiff may reside, by the Service of Process upon the Comptroller and stipulating that such service of process shall be taken and held in all Courts to be valid and binding as personal service upon the Company itself.   Such written consent given to the Comptroller by said Companies shall be authenticated by the seal of said Foreign Investment Company, and by the signatures of the President and Secretary of the Corporation, and shall be accompanied by a duly certified copy of the Order of Resolution of the Board of Directors of the said Corporation, authorizing the President and Secretary to execute same.   When service shall be perfected in such manner upon any such Company, the same shall constitute due Service of Process upon such Company, and binding and effective in all respects.

Sec. 4.   It shall be the duty of the Comptroller, together with the Attorney General, to examine the statements and documents so filed, and if said Comptroller and Attorney General may deem it advisable, they shall make or have made a detailed examination of such Investment Company, and its affairs, which examination shall be at the expense of such investment company as hereinafter provided; and if he finds that such Investment Company is solvent, and that its articles of incorporation and association, its Constitution and By-Laws, its proposed plan of business and its contracts, contain a fair, just and equitable plan for the tranaction of business, they

shall issue to such Investment Company a statement reciting that such Company has complied with the provisions of this Act, that detailed information with regard to the company and its securities is on file in the office of the Comptroller at Tallahassee, Florida, that such Investment Company is permitted to do business in this State, and that such statement shall also recite in bold type that the Comptroller is not required or permitted by law to recommend the securities offered for sale by such Investment Company. But if said Comptroller and Attorney General find that such Articles of Incorporation or association, charter, constitution and by-laws, plan of business or proposed contract contain any provision that is unfair, unjust or inequitable or oppressive to any class of contractor, or if they decide from their examination of its affairs that said Investment Company is not solvent and does not intend in good faith to do a fair and honest business, then they shall notify said Investment Company in writing of their finding and it shall be unlawful for such company to sell or offer for sale any of its securities in this State until it shall so change its constitution and by-laws, articles of incorporation or association, its proposed plan of business and contract, and its general financial condition in such manner as to satisfy the Comptroller and Attorney General that it is solvent, and its articles of incorporation or association, its constitution and by-laws, its proposed plan of business and proposed contract provide for a fair, just and equitable plan for the transaction of business. Provided further that all expenses paid or incurred and all fees or charges received or collected for any examination made under these provisions of this Section of this Act shall be reported in detail to the Comptroller, and a full report and record thereof made and kept.

Sec. 5. It shall not be lawful for any such Investment Company, or any agent thereof, or any person owning or controlling any of the securities of such company, to sell or offer for sale any of the said securities hereinbefore specified, except as provided in Section One, within the State of Florida until it shall have complied in all respects with the terms of this Act and obtained the certificate of the Comptroller and Attorney General as provided herein.

Sec. 6. Any Investment Company may appoint one or more Agents, but no agent shall sell or offer for sale in this State, except as provided in Section One of this Act, the securities of any such Investment Company until he shall first register with the Comptroller as agent for such Investment Company, and for each of such registrations there shall be paid to the Comptroller the sum of One Dollar. Provided the Comptroller and Attorney General, at their discretion, shall require such Agent or Agents to give and file with the Comptroller bond in such sums and amounts as they may deem best to the best interests of the investing public, either in their own right or on the part of the Investment Company whom he represents, payable to the Governor of the State of Florida, and conditioned that the securities he offers for sale are fair and just, and that he will save harmless, the purchaser or purchasers against any loss which may be occasioned by reason of the reliance of such purchaser or purchasers on any false or fraudulent representation made in the course of the sale of such securities. And it is hereby expressly provided that any person or persons who may have sustained an injury covered by such bond, may, in addition to any other remedy that he may have, bring suit on such bond in the name of the Governor of the State of Florida, for the use of such person or persons. Such registration

shall entitle such Agent to represent such Investment Company as its agent until the first day of January, following, unless such authority is sooner revoked by the Comptroller or the Investment Company, and such authority shall be subject to revocation at any time by the Comptroller and Attorney General for cause appearing to them sufficient.

Sec. 7.   Every Investment Company, Domestic or Foreign, shall at such times as required by the Comptroller and Attorney General, file a statement verified by the oath of the person authorized to make the same, setting forth in such forms as may be prescribed by the Comptroller and Attorney General its financial condition and the amount of its assets and liabilities and furnish such other information concerning its affairs as said Comptroller and Attorney General may require; such statement shall be accompanied by a filing fee of Five Dollars.   Any Investment Company failing to file its report within sixty days after the written request of the Comptroller and Attorney General shall forfeit its right to do business in this State.

Sec. 8.   Whenever it shall appear to the Comptroller and Attorney General that the assets of an Investment Company doing business in the State are impaired to the extent that such assets do not equal its liabilities or that it is conducting its business in an unsafe, inequitable, or unauthorized manner, or jeopardizing the interests of its stockholders and investors in stocks, bonds, or other securities by it offered for sale, or whenever any Investment Company shall fail to or refuse to file any papers, statements or documents, required by this Act, without giving satisfactory reasons therefor, said Comptroller and Attorney General shall at once revoke the license of said Invest-

ment Company to do any further business in the State of Florida.

Sec. 9. Any person who shall knowingly subscribe to or make or cause to be made, any false statements or false entry in any book of such Investment Company or exhibit any false paper with the intention of deceiving any person authorized to examine into the affairs of such Investment Company, or shall make, utter or publish any false statement of the financial condition of such Investment Company or the stock, bonds, or other securities by it offered for sale, shall be deemed guilty of a felony, and upon conviction thereof shall be fined not exceeding Five Thousand Dollars or imprisoned in the State Prison not exceeding five years, or either or both, in the discretion of the court.

Sec. 10. Any person or persons, agent or agents, who shall sell or attempt to sell the stocks, bonds or other securities of any investment company, domestic or foreign, when such investment company has not complied with the provisions of this Act; and any agent or agents who shall sell or attempt to sell any such securities of any investment company, domestic or foreign, in this State, which agent is not at the time fully registered and has not fully complied with the provisions of this Act, shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be punished by imprisonment in the county jail not exceeding one year or by fine not exceeding one thousand dollars, or by both such fine and imprisonment in the discretion of the Court.

Provided, That nothing in this Act shall extend to any seller of stock, bond or other security, who has purchased the same in good faith for value, and who is the bona fide owner of such stock, bond, or other security at the time of such sale.

Sec. 11. All fees herein provided for shall be collected by the Comptroller and shall by him be turned into the State Treasury and all such fees turned into the State Treasury, are hereby reapportioned to the Comptroller for the purpose of paying all salaries and expenses necessary for the carrying into effect of this Act, and the Comptroller is hereby authorized to appoint such clerks and deputies as are absolutely necessary to carry into full force and effect the provisions of this Act. All money actually or necessarily paid out by the Comptroller to any clerk or deputy appointed under this Act as salaries or compensation for services, or any money actually or necessarily paid out by the Comptroller, or by any clerk or deputy or employee appointed under this Act, for traveling or incidental expenses, shall be paid by the State Treasurer out of such fees, upon warrants drawn by the Comptroller and approved by the Governor, containing an itemized account of such salaries or expenses.

Sec. 12. All laws and parts of laws in conflict herewith are hereby repealed.

Sec. 13. This Act shall take effect and be in force from and after July first, 1913.

Approved May 20, 1913."

It is in effect contended that the statute violates organic law in (1) that it was not legally enacted under the same title shown by the act and that the title is insufficient; (2) that it vests judicial powers in administrative officers; (3) that it deprives petitioner of liberty and property without due process of law and denies the equal protection of the laws; (4) that it violates the right to contract and the obligation of contracts; (5) that it unlawfully burdens interstate commerce.

Unless the statute beyond all reasonable doubt violates some particular provision of the State or Federal Constitutions, it is the duty of the court to enforce it.

The leading purpose of the statute is *to define* "domestic and foreign investment companies" and to regulate sales by them of stock and other securities to persons in Florida. Such a regulation is clearly within the police power to protect the people of the State from imposition; and if no provision of organic law is violated in the enactment or enforcement of the statute, the legislative will and intent should be made effective.

As the title clearly indicates the true purpose of the act is *to define* domestic and foreign investment companies and to regulate sales by them of stock and other securities to persons in Florida, the title cannot be said to be violative of the constitutional provision that "each law enacted in the Legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title." It does not clearly appear that the provision of the statute relative to the required agreements as to service of process on foreign corporations that are affected by the act, is not germane to the subject expressed in the title or "matter properly connected therewith." The title is not misleading. The fact that during the progress of its consideration the title of the act contained among its expressions, the phrase "to provide for a review of their decisions by the Railroad Commission of the State of Florida," which phrase does not appear in the title of the act as signed by the Governor, does not affect the validity of the act. Amendments are not required to be noted in the journals, and if the quoted matter was at some time a part of the title, it is immaterial, particularly since no such provision appears in the body of the statute. The appearance

of the quoted words in the title at any stage of the en-
actment could not reasonably have misled any one. Since
the primary expression in the title of the act is a purpose
*to define* the "investment companies" to which the regula-
tions were applicable, the title used is not a misnomer.
The Constitution requires only that the *subject* of the act
"shall be *briefly* expressed in the title." There is no clear
violation of the constitutional provisions as to the title of
the act, or to its passage. See Butler v. Perry, decided at
the last term.

The statute defines the character of the corporations
that "shall be known for the purposes of" the act as "In-
vestment Companies;" requires statements to be filed with
the State Comptroller showing the status and financial
standing of such corporations affected by the act; and pro-
vides that if the Comptroller and Attorney General upon
examination find that any such investment company "is
solvent, and that its articles of incorporation and asso-
ciation, its constitution and by-laws, its proposed plan
of business and its contracts, contain a fair, just and
equitable plan for the transaction of business they *shall*
issue to such Investment Company a statement reciting
that such company has complied with the provisions of
this act; that detailed information with regard to the com-
pany and its securities is on file in the office of the Comp-
troller at Tallahassee, Florida; that such Investment Com-
pany is permitted to do business in this State, and that
such statement shall also recite in bold type that the
Comptroller is not required or permitted by law to recom-
mend the securities offered for sale by such Investment
Company. But if said Comptroller and Attorney General
find that such Articles of Incorporation or association,
charter, constitution and by-laws, plan of business or pro-
posed contract contain any provision that is unfair, unjust

or inequitable or oppressive to any class of contractor, or if they decide from their examination of its affairs that said Investment Company is not solvent and does not intend in good faith to do a fair and honest business, then they shall notify said Investment Company in writing of their finding and it shall be unlawful for such company to sell or offer for sale any of its securities in this State until it shall so change its constitution and by-laws, articles of incorporation or association, its proposed plan of business and contract, and its general financial condition in such manner as to satisfy the Comptroller and Attorney General that it is solvent, and its articles of incorporation or association, its constitution and by-laws, its proposed plan of business and proposed contract provide for a fair, just and equitable plan for the transaction of business."

The examination and finding authorized to be made by the Comptroller and Attorney General, are merely administrative in their nature; and every act of such administrative officers under the statute, whether in granting or in refusing to grant, or in revoking permits, is subject to judicial review whether so expressed in the statute or not. The action of such administrative officers is in no sense a judicial judgment or decree. In this case the petitioner is the agent of a domestic corporation which was chartered by this State after the statute here assailed was enacted and in force, therefore if the statute is valid no question of the violation of the obligation of charter rights, or of the right to contract, is involved here. As the offense charged is an attempt by an agent in violation of the statute to sell and offer to sell in Leon county, which is "outside of the county where such corporation has its principal office or place of business," shares of the capital stock of a domestic corporation that is within the statu-

tory definition and regulation, no question of interstate commerce is presented.

Certainly it is within the power as it is clearly the duty of the State to limit and regulate the powers and operations of Corporations which it brings into existence. This limitation and regulation may in the legislative discretion be accomplished by administrative action within the ultimate and reasonable bounds definitely fixed by the statute, every such administrative action being subject to judicial review. See State *ex rel.* v. Board Ins. Com'rs., 37 Fla. 564, 20 S. R. 772, 33 L. R. A. 288. It is manifestly competent for the lawmaking power to authorize an administrative finding whether the "proposed place of business and the contracts" of a domestic corporation "contain a fair, just and equitable plan for the transaction of business," which finding will warrant administrative action duly taken under a statutory police regulation in the interest of the public welfare, unless restrained or controlled by appropriate judicial action. There is no ground whatever in this case to support a contention of taking property without due process of law. Even if the State has not provided along similar lines adequate protection of the public against firms and individuals, the petitioner here cannot complain of it if this statutory regulation is lawfully applied in this case. The statute contemplates an adequate hearing as to all rights involved. The petitioner is not denied the equal protection of the laws, since this statutory regulation has relation to the public welfare and is applicable alike to all corporations similarly conditioned with the domestic corporation concerned here, of which the petitioner acted as agent in violating the statute. Such regulations as those prescribed are peculiarly appropriate to corporations as classified in the statute. No arbitrary discrimination appears. See

Dutton Phosphate Co. v. Priest, 67 Fla. 370, 65 South. Rep. 282; Otis v. Parker, 187 U. S. 606, 23 Sup. Ct. Rep. 168.

The necessity and adequacy of the regulations are determined by the enactment; and the organic rights of the petitioner have not been invaded.

The petitioner will be remanded.

SHACKLEFORD, C. J., AND TAYLOR, HOCKER AND WHITFIELD, J. J., concur.

COCKRELL, J., absent.