THE STATE OF FLORIDA ex rel. L. S. BONSTEEL, Petitioner, v. LOUIS A. ALLEN, AS SHERIFF OF DADE COUNTY FLORIDA, Respondent.

Opinion Filed February 10, 1922.

1.  Where the title of an act amendatory of the Revised General Statutes, gives the numbers of the sections of the law designed to be amended, and also briefly expresses the gen-

eral subject embraced in such sections, if they have a common connection with the general subject, it is sufficient notice to the legislature and to the public, as reasonably to lead to an inquiry into the body of the bill to ascertain what changes are proposed in the existing law, and anything germane to the general subject expressed in the title may be included in the act.

2. "Fixing maximum weights," "Classification of vehicles by weights as well as by structure of tires," and "Legislating certain vehicles from use of roads," are matters properly connected with the operation of motor vehicles, and germane thereto.

3. While it is within the power of the courts to declare laws levying license taxes void because of the unreasonable and arbitrary exercise of the State's power either in the classification or in fixing the amount of the license, such power will not be exercised unless the amount of the license tax is so great, or the classification so palpably arbitrary as to be beyond the necessities for the legislation, or equivalent to an impairment of the constitutional rights of property, or tend to prevent a great number, if not all persons from pursuing otherwise lawful occupations which do not impair public safety, public health, or injure public property.

4. The prohibition of the use on the public highways outside of municipalities of motor vehicles of certain weights enumerated in Section 5 of the Act amending Section 1011 Revised General Statutes, is not unreasonable when considered in connection with the character of our existing public highways.

5. The appropriation of money is the setting it apart formally or officially for a special use or purpose, and where that is done by the legislature in clear and unequivocal terms in a duly enacted law, it is an appropriation.

A Case of Original Jurisdiction.

Motion denied.

*Bart A. Riley,* for Petitioner;

*Rivers Buford,* Attorney General, and *Fred T. Myers,* for *Respondent.*

BROWNE, C. J.—A writ of *habeas corpus* was issued from this court upon petition that challenges the constitutionality of Chapter 8410 Laws of Florida, Acts of 1921.

Without referring *seriatim* to the grounds enumerated by the petitioner upon which he seeks to have the act declared unconstitutional, we will discuss them in such a way as to dispose of all the questions raised.

The contention that the act violates Section 16, Article III of the Constitution we decide adversly to the petitioner. Where the title of an act amendatory of the Revised General Statutes, gives the numbers of the sections of the law designed to be amended, and also briefly expresses the general subject embraced in such sections, if they have a common connection with the general subject, it is sufficient notice to the legislature and to the public, as reasonably to lead to an inquiry into the body of the bill to ascertain what changes are proposed in the existing law, and anything germane to the general subject expressed in the title may be included in the act. Stokes v. Galoway, 61 Fla. 437, 54 South. Rep. 799.

In the title before us there is but one subject, "the operation of Motor Vehicles, Trailers, Semi-trailers, Motorcycles and Side-cars."

"Fixing maxium weights," "Classification of vehicles by weights as well as by structure of tires," and "Legislating certain vehicles from use of roads," are matters properly connected with the operation of motor vehicles, and germane thereto.

The same is true of the "Delegation of powers to Comptroller," and the "Delegation of power to County Commissioners." The duties imposed on the Comptroller and the County Commissioners, are adminstrative acts to carry into effect the provisions of the law regulating the operation of motor vehicles. The law cannot be self-executing. There must be persons charged with the duty of administering it, and a reasonable amount of discretion must be vested in them in the performance of those duties. We do not find anything in the law that vests arbitrary or unlimited powers upon these officials.

While it is within the power of the courts to declare laws levying license taxes void because of the unreasonable and arbitrary exercise of the State's power either in the classification of or in fixing the amount of the license, such power will not be exercised unless the amount of the license tax is so great, or the classification so palpably arbitrary as to be beyond necessities for the legislation, or equivalent to an impairment of the constitutional rights of property, or tend to prevent a great number, if not all persons from pursuing otherwise lawful occupations which do not impair public safety, public health, or destroy property.

We do not find that the tax levied by the Act of 1921 upon owners of motor vehicles or the classification for the purposes of regulating their operation, is so unreasonable as to make the act unconstitutional in this respect.

The public highways of the State are built and maintained by public funds derived from various sources of taxation. Their construction and maintenance is a charge upon the people of the State, and it is not only the right but the duty of the State to prohibit their use by motor vehicles that by reason of their great weight or other rea-

sons are likely to impair and seriously injure the roads. In the exercise of this power the regulations and prohibitions must be just and reasonable, and not such as would impair the reasonable use of the highways by the public. We find, therefore, that the prohibition of the use on the public highways outside of municipalities of motor vehicles of certain weights enumerated in Section 5 of the Act amending Section 1011 Rev. Gen. Statutes, is not unreasonable when considered in connection with the character of our existing public highways.

The attack upon the Act because it violates Section 4 of Article IX of the Constitution in that it attempts to direct the expenditure of public moneys wihout an appropriation made therefor, is also untenable.

This provision of the Act is in part as follows: "All moneys paid into the State Treasury under the provisions of this Chapter except such as shall first be set aside to pay for number plates, postage on same, and the actual clerical work required under the provisions of this Chapter, shall be appropriated as follows: Five Per cent. shall be set aside for the maintenance of the State Road Department; Twenty-five per cent. shall be set aside as a State Aid Fund to be used by the Board of County Commissioners for the purpose of construction and maintenance of county roads, and the same shall be apportioned to the several counties in proportion to the Auto License Tax collected from each county. The balance shall constitute a fund to be used by the State Road Department for the construction and maintenance only of State and Federal Aid Roads, which are or may be designated by law." Sec. 12, Chap. 8410 Acts of 1921, amending Sec. 1031 Rev. Gen. Stats. 1920.

The word "appropriation" is not used in connection with the setting aside of a portion of the money to pay for number plates, postage and clerical work, but it is as much an appropriation as if that word were used. It is a setting apart of money formally or officially for a special use or purpose (see Funk and Wagnall's Standard Dictionary), and where that is done by the legislature in clear and unequivocal terms, it is an appropriation.

Statutes setting apart or designating public moneys for special governmental purposes have been held to be appropriations, notwithstanding the word appropriation is not used. The statute creating the State Board of Health adopted February 20, 1889, provided: "That there shall be annually levied and collected upon the assessable property of the State a tax of not more than half a mill, the revenue derived from which assessment and collection shall constitute a special fund to be used for public health purposes of the State. " (Sec. 20). This was carried forward in the Revised Statutes as Sec. 784. The word appropriation is not used, but this section was construed by this court in the case of State .v. Southern Land and Timber Co., 45 Fla. 374, 33 South. Rep. 999, where it was held that the language was equivalent to an appropriation, and this construction was sustained in the case of Amos v. Mosely, 74 Fla. 555, 77 South. Rep. 619.

The cases cited by petitioner to support his contention that the power vested in the Comptroller in the matter of the expenditure of part of the moneys derived from the Motor Vehicle License Tax, is unconstitutional as a delegation of unlimited power to the Comptroller in the expenditure of public funds, are not in point. In those cases, People v. Sargent, 254 Ill. 514, 98 N. E. Rep. 959; State ex rel. Ruth v. Budge, 14 N. D. 532, 105 N. W. Rep. 724;

State *ex rel.* Miller v. Taylor, 27 N. D. 77, 145 N. W. Rep. 425; State *ex rel.* City of Fargo v. Metz, 40 N. D. 299, 168 N. W. Rep. 835, there was authority to raise money and expend it without being deposited in the treasury, and authority to expend it without an appropriation by the legislature.

In the case of People v. Sargent, *supra,* the Secretary of State was authorized to collect all moneys paid for licensing motor vehicles, and after paying "the cost of preparing and delivering the registration certificates, registration seals and number plates," to deposit the residue in the State Treasury. The court held: "Under the holding of this court, in Board of Trade v. Cowan, 252 Ill. 554, 96 N. E. 1084, the Secretary of State cannot apply fees received by him to the payment of expenses in any particular department of his office; but the total amount received must be paid into the state treasury and paid out only in pursuance of an appropriation act passed by the Legislature."

In the case at bar the act contemplates, as the law requires, that all money derived from the license tax shall be paid into the treasury, and as we have shown, the legislature set apart certain of the funds to pay for number plates, postage and clerical work.

It is apparent that the act contemplated that only a small portion of the moneys received should be used for those purposes, and it does not appear that it is being disregarded in this respect.

Even if this were so, it would only result in prohibiting the Comptroller from using any of the funds for this purpose, and it would not affect other provisions of the act. The tax could still be collected and applied to the main

purposes enumerated in the act, and the petitioner would be required to pay the license tax, and his failure to do so subjects him to the penalty provided by law.

Upon all the points upon which the act is attacked in the petition for writ of *habeas corpus* we find that it is constitutional and valid, and the motion to quash the return is denied, the petition dismissed and the prisoner remanded.                                        •

TAYLOR AND WHITFIELD, J. J., concur.

ELLIS AND WEST, J.J., Especially concur in decision.

WHITFIELD, J., CONCURRING.—The constitution provides that the subject of an act "shall be *briefly* expressed in the title" and that "matter properly connected" with the subject expressed in the title may be embraced in the act.

The organic provision is not designed to require a multiplicity of statutes to express the lawmaking will as to broad general subjects that may properly be included in single enactments under fairly informing titles, but the purpose is to prevent the use of deceptive and misleading titles in enacting laws and to render inoperativve provisions contained in an act. that are not "properly connected" with, *i. e.* germane and appropriate to, the subject expressed in the title, of which provisions the title does not fairly give notice, the title only and not the body of the act being published in the legislative journals.

The Subject expressed in the title to Chapter 8410 is the repeal of one and the amendment of other enumerated sections of the Revised General Statutes of 1920, "relating to the operation of motor vehicles" etc.  By enumerating

the sections of the Revised General Statutes to be amended, and by stating briefly the general subject of the sections, the title is sufficient to put legislators and the public upon notice of the general subject of the act, and upon inquiry as to the particular nature of the provisions of the enumerated sections of the Revised General Statutes and of the provisions of the amending act, it being permissible to embrace in the amending act any "matter properly connected" with the subject expressed in the title.

The first legislation of the State relating to motor vehicles provided for their registration and provided police regulations as to their operation on the public highways. Chapter 5437, Acts of 1905. Then by a later separate act, license taxes on motor vehicles were imposed. Chapter 6212, Acts of 1911. Subsequently both license taxes and police regulations as to operation were provided for in one act, the title to which in terms covered both operation regulations and license taxes. Chapter 7275, Acts of 1917; Chapter 7737, Acts of 1918. And all the legislation relating to the general subject of the operation of motor vehicles and all of the provisions as to license taxes and police regulations of operation, except the penalty provisions, were incorporated in the Revised General Statutes under a chapter heading entitled "Motor Vehicles," with appropriate headings to each section indicating the particular contents thereof  This being so, a reference in the title of the act here considered, to stated sections of the Revised General Statutes as "relating to the operation of motor vehicles" is not so restrictive as to be insufficient notice of, or to be misleading as to, provisions embraced in the amending act relative to both license taxes upon and police regulations of the operation of motor vehicles.

As to the sufficiency of titles to acts amending sections of general revisions of statutes, see Ex Parte Bush, 48 Fla. 69, 37 South. Rep. 177; Strobhar v. State. 55 Fla. 167, 47 South. Rep. 4; State *ex rel.* Turner v. Hocker, 36 Fla, 358, 18 South. Rep. 767; Rushton v. State *ex rel.* Collins, 75 Fla. 432, 78 South. Rep. 345; Stokes v. Galloway, 61 Fla. 437, 54 South. Rep. 799; Lester v. State, 37 Fla. 382, 20 South. Rep. 232.

The title does not indicate that the enumerated sections of the Revised General Statutes to be amended, refer merely to "the operation of Motor Vehicles," etc., but that the sections contain matters "relating to the operation of motor vehicles," etc., which makes the title more comprehensive. The only matter of consequence here that is contained in the amending act which was not covered by the previous law, is the limitation as to the weight of motor vehicles that may be operated on the highways, and that certainly is matter "relating to" and also "matter properly connected" with "the operation of motor vehicles," etc. And regulations may include limited prohibitions in the subject regulated. Ex Parte Lewinsky, 66 Fla. 324, 63 South. Rep. 577.

The subject of the act being expressed in the title of the amending act, the Legislature was not restricted by the constitution to the mere amendment or repeal so expressed, and it was competent to include in the act other provisions of law upon the same subject and properly connected therewith, Gibson v. State, 16 Fla. 291; Saunders v. Provisional Municipality of Pensacola, 24 Fla. 226, 4 South. Rep. 801; Potter v. Lainhart, 44 Fla. 647, 33 South. Rep. 251.

All the provisions of the act relating to license taxes, limitations as to weight, etc., that are assailed here, have direct and appropriate relation to the operation of motor

vehicles, which is the broad general subject expressed in the title, therefore, there is no variance between the title and the provisions contained in the body of the act; and as the title contains no restrictive words that are deceptive and misleading as to the provisions of the act, the constitution is not violated, even though particular provisions contained in the act may not have been contemplated by those who know of or could have known of the title of the act. The validity of the provisions of the act does not depend on their having in fact been anticipated or contemplated by those who may have known of the title of the act. If under the title as worded, provisions may legally be incorporated in an act, it is not essential to their validity that the provisions be in fact known to the public before their enactment into law.

The provisions challenged are certainly matters ''relating to'' and ''properly connected'' with ''the operation of motor vehicles;'' and as to such provisions the title is not deceptive or misleading. See Gibson v. State, 16 Fla. 291; Smith v. State, 29 Fla. 408, 10 South. Rep. 894; Ex. Parte Powell, 70 Fla. 363, 70 South. Rep. 392; State *ex rel.* Attorney General v. Knowles, 16 Fla. 577; State *ex rel.* Turner v. Hocker, 36 Fla. 358, 18 South. Rep. 767; Rushton v. State *ex rel.* Collins, 75 Fla. 422, 78 South. Rep. 345. The title need not be an index to the contents of the act; nor need it specify the details of the enactment. The constitution expressly provides that the subject of the act shall be ''briefly'' expressed in the title. State v. Bethea, 61 Fla. 60, 55 South. Rep. 550; Butler v. Perry, 67 Fla. 405, 66 South. Rep. 150; Stokes v. Galloway, 61 Fla. 437, 54 South. Rep. 799; Holden v. State, 28 Fla. 303, 9 South. Rep. 716; Jackson v. Neff, 64 Fla. 326, 60 South. Rep. 350; Ex Parte Gilleti, 70 Fla. 442, 70 South. Rep. 446; State

*ex rel.*   Terry v. Vestal, 81 Fla. 625, 88 South. Rep.
477; City of Jacksonville v. Basnett, 20 Fla. 525; Florida
E. C. R. Co. v. Hazel, 43 Fla. 263, 31 South. Rep. 272;
State *ex rel.* Moodie v. Bryan, 50 Fla. 293, 39 South. Rep.
929; Ex parte Taylor, 68 Fla. 61, 66 South. Rep. 292.

The provisions of Chapter 8410 that are challenged do
not violate other provisions of the constitution as in Ad-
visory Opinion to the Governor, 14 Fla. 285; Jacksonville,
T. & K. W. Ry. Co. v. Adams, 33 Fla. 608, 15 South. Rep.
257; Ex Parte Wells, 21 Fla. 280; State v. Patterson, 50
Fla. 127, 39 South. Rep. 398; Harper v. Galloway, 58 Fla.
255, 51 South. Rep. 226; State *ex rel.* Clarkson v. Philips,
70 Fla. 340, 70 South. Rep. 367; Board of Com'rs of Hills-
borough County v. Savage, 63 Fla. 337, 58 South. Rep.
835; State *ex rel.* Hoadly v. Board of Insurance Com'rs, 37
Fla. 564, 20 South. Rep. 772.

The law requires the Comptroller to collect the amounts
required to be paid for the privilege of operating motor
vehicles upon the highways of the State (Sec. 5, Chap.
8410), and provides that '' it shall be the duty of every
State   *   officers within this State, authorized to collect
funds due the State, to pay all sums officially received by
him into the State Treasury promptly,'' (Sec. 406, Rev.
Gen. Stats. 1920), and that the State Treasurer ''Shall
receive and keep all funds,   *   in such manner as may be
prescribed by law,'' (Sec. 24, Art. IV. Const.) and that
''no money shall be drawn from the treasury except in
pursuance of appropriations made by law,'' (Sec. 4, Art.
IX Const.; *In re* Advisory Opinion, 43 Fla. 305, 31 South.
Rep. 348,) and that the State Treasurer ''shall disburse
no funds   *   except upon the order of Comptroller coun-
tersigned by the Governor, in such manner as shall be pres-
cribed by law'' (Sec. 24, Art. IV Const.), and that the

Comptroller shall examine, audit and settle any demand against the State arising under any law and to issue his warrant for the amount allowed to be paid by the treasurer under appropriations made by law, Secs. 112, 113, 116, etc., Rev. Gen. Stats. 1920. The State Treasurer is by the constitution made the custodian of *all* State funds.

The statute, Chapter 8410, provides that "all moneys paid into the State Treasury under the provisions of this chapter, except such as shall first be set aside to pay for number plates, postage on same, and the actual clerical work required under the provisions of this chapter shall be appropriated as follows," etc. This is within the meaning of the constitution, an appropriation by law of a contemplated small portion of the collections for license taxes on motor vehicles that is by the act "set aside" for a public purpose, viz: "to pay for" number plates and clerical help and postage that are necessary to the execution of the law. 4 C. J. 1459; 3 Cyc. 565; Am. & Eng. Enc. Law (22) 515. The amount that would be needed for the stated expenses could not have been determined in advance. The things for which payments may be made are specifically and definitely stated in the act. If the appropriation features of the act are not permissible under the title, the petitioner is not injured.

The statute does not confer legislative power or unlimited discretion upon the Comptroller as is asserted. Under the law the Comptroller is required to collect all the license fees or taxes levied for the operation of motor vehicles on the public highways of the State and "to pay all sums officially received by him into the State Treasury promptly." After being paid into the treasury, the Comptroller is authorized upon proper vouchers for stated material and clerical help used in executing the statute, to draw war-

rants upon the treasurer to be countersigned by the Governor and paid by the State Treasurer, from a contemplated small portion of the motor vehicle license fees or taxes collected and paid into the State Treasury that is by the statute "set aside to pay for number plates, postage on same, and the actual clerical work required under the provisions of" the act. The administrative discretion vested in the Comptroller by the statute to execute its provisions is not a legislative power or a judicial power, and the authority conferred is limited by the act. See State v. Atlantic Coast Line R. Co., 56 Fla. 617, 47 South. Rep. 969; Bailey v. VanPelt, 78 Fla. 337, 82 South. Rep. 789; Ex Parte Taylor, 68 Fla. 61, 66 South. Rep. 292; Zackary v. Morris, 78 Fla. 316, 82 South. Rep. 830; Whitaker v. Parsons, 80 Fla. 352, 86 South. Rep. 247; Everglades Sugar and Land Co. v. Bryan, 81 Fla. 75, 87 South. Rep. 68.

The administrative discretion of the Comptroller to determine within the limitations of the statute, the classification of a motor vehicle and the amount of the license fee or tax to be paid thereon to the State under the act and to otherwise execute the law within the authority conferred, is an admisistrative and not a judicial discretion, and it is not subject to control by the courts, unless he abuses his discretion. Towle v. State, 3 Fla. 202; Cotten v. County Commissioners of Leon County, 6 Fla. 610; State ex rel. Moody v. Barnes 25 Fla. 298, 5 South. Rep. 722; Pensacola & A. R. Co. v. State, 25 Fla. 310, 5 South. Rep. 833; State ex rel. Railroad Com'rs v. Atlantic Coast Line R. Co., 60 Fla. 465, 54 South. Rep. 394; State ex rel. Railroad Com'rs v. Louisville & N. R. Co., 62 Fla. 315, 57 South. Rep. 175; Gamble v. State, 61 Fla. 233, 54 South. Rep. 370; State ex rel. v. Commissioners of Baker County,

22 Fla. 29; Perry v. Town of Panama City, 67 Fla. 285, 65 South. Rep. 6.

If the discretionary authority conferred by the statute upon the County Commissioners to grant permission to operate motor drawn vehicles, on roads designated by them, of the aggregate weight of truck and load, not exceeding sitxeen thousand pounds, may be regarded as an unauthorized delegation of power, the provision may be treated as eliminated under the express terms of the statute. Sec. 14½, Chap. 8410; State *ex rel.* Clarkson v. Philips, 70 Fla. 340, 70 South. Rep. 367; Board of Com'rs of Hillsborough County v. Savage, 63 Fla. 337, 58 South. Rep. 835. In any event the entire act is not void as in 18 Fla. 255; 36 Fla. 703; 39 Fla. 477; 40 Fla. 392; 50 Fla. 127; 70 Fla. 55; 70 Fla. 102; 87 South. Rep. 634; 84 South Rep. 84.

The public highways of the State are constructed and maintained at public expense in taxation and in enforced personal labor, (Sec. 1604; 1605 Revised General Statutes. Butler v. Perry, 67 Fla. 405, 66 South. Rep. 150; Butler v. Perry, 240 U. S. 328, 36 Sup. Ct. Rep. 258), and the privilege of using them may be conditioned upon the observance of prescribed regulations for the conservation of the highways and of the public safety and comfort and upon the payment of privilege or license taxes upon vehicles, the nature and extent of the regulations and taxes to be within the legislative discretion, provided no unjust or arbitrary discriminations are imposed in the statutory regulation or levies and due process of law is observed in enforcing the enactments. Hendrick v. State of Maryland, 235 U. S. 610, 35 Sup. Ct. Rep. 140; Kane v. New Jersey, 242 U. S. 160, 37 Sup. Ct. Rep. 30; Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 South. Rep. 629.

. VOL. 83, JANUARY TERM, 1922. 229

State ex rel. Bonsteel v. Allen—Concurring Opinion.

See also Ann. Cas. 1915C 706; Berry on Automobiles, (3rd ed.) §§ 106 *et seq.*

The regulations may fix a maximum of weight of vehicles and load that may be operated on some or all roads, may make reasonable discriminations in regulations and privilege exactions predicated upon differences in the character of the tires on vehicles that are more or less wearing and destructive in passing over the roads; may make the privilege charges vary with the weight, character and uses of vehicles as the lawmaking power considers proper, and may discriminate as to uses and license charges between vehicles used in municipalities and those used in the country and between those used for hire and those used for private purposes; and reasonable exceptions do not render the regulations invalid. Jackson v. Neff, 64 Fla. 326, 60 South, Rep. 350. See also State *ex rel.* Clarkson v. Phillips, 70 Fla. 340, 70 South. Rep. 367; Peninsular Gas. Co. v. State, 68 Fla. 411, 67 South. Rep. 165. 235 U. S. 610.

All property is acquired and held and used subject to the proper assertion of lawful governmental powers. The acquisition of heavy weight motor vehicles cannot prevent the proper exercise of the police power of the State to conserve the public highways, by limiting the weight of such vehicles that may be operated on the public roads, even though some heavy weight vehicles previously used on the highways are now excluded therefrom by the statutory regulations. The organic provisions securing private rights do not preclude reasonable regulations of the use of private property to preserve the public highways and to conserve the public safety and welfare, even if such regulations render less valuable or curtail the uses of, property already acquired, the public safety and necessities being superior to private property right.

The equal protection of the laws provisions of the Fourteenth Amendment to the Federal Constitution and Sections 1 and 2 of the Declaration of Rights of the State Constitution forbid and render inoperative, arbitrary and unjust discriminations that are made without reasonable classifications, increasing license taxes; but such organic provisions do not forbid or render inoperative reasonable differences in the amounts of license taxes that are predicated upon just classifications. State *ex rel.* Clarkson v. Philips, 70 Fla. 340, 70 South. Rep. 367; Pullman Co. v. Knott, 70 Fla. 9, 69 South. Rep. 703.

The differences in license taxes between motor vehicles operated for hire and those operated for private use, do not relate to the weight of the vehicle and load which may be operated on the highways but to the privilege of license tax. The latter is not an unjust discrimination, since those who use the public roads for the operation of vehicles for hire as a business occupation, may in fairness be required to pay more license or privilege tax than those who use the highways only for their own private transportation purposes. Reasonable differences are not unjust discriminations The amounts of the license taxes are not patently excessive and persons operating motor vehicles on the public roads for hire are not unjustly discriminated against in the license taxes imposed upon them.

The proviso in favor of governmental agencies, etc., relates to license taxes to be paid by them and was not intended to permit them to operate upon the highways, motor vehicles with loads of greater weights than the maximum weights fixed in the statute, or to exempt them from the requirements of the police regulations contained in the statute that are designed to conserve the public safety and comfort on the highways.

The tax is not for ordinary governmental expenses, but is for the privilege of using a facility provided at the public expense.

The return for the tax is direct and immediate in the use of an improved highway, for the operation of the vehicles taxed. Improved roads are essential for the operation of motor vehicles, therefore, the owners thereof should pay for the privilege of using the improved highways provided at public expense. See Berry on Automobiles (3rd. ed.) Sec. 108.

The fact that the license fees for the use of motor vehicles on the public highways are much greater in amount than they have been heretofore, does not render the present levy illegal, since the amount of the license tax is within the legislative discretion, so long as the tax imposed upon vehicles suitable for the highways is not in fact prohibitive or unjustly discriminating or arbitrarily oppresive; and no illegality appears in the levies.

The statutory discriminations as to license taxes in this case are not near so great as were the municipal ordinance discriminations condemned in Howland v. State *ex rel.* Zirklebach, 56 Fla. 422, 47 South. Rep. 963, and Roach v. Ephren, decided at the last term of this court.

WEST, J.—Concurring.

The federal government and the various state governments in co-operation have entered upon a comprehensive program of road building. Funds necessary for this purpose are derived from federal and state taxation and are made available by legislative appropriation. The authority of the federal government for participation in this pro-

gram is its constitutional power to establish post offices and post roads. The powers exerted by a state government in its participation in this public improvement are the taxing power and the police power. The object prompting the undertaking is generally the public benefits to be derived therefrom.

The improvement of public highways facilitates delivery of mail, which under the parcel post system comprehends matter of great variety, developed in recent years to a business of great volume and proportions, promoting in its operation the public convenience and general prosperity and welfare of the citizenship of the country in large measure. That the granted power of the federal government mentioned may be exerted in this way is beyond any question.

This improvement is so clearly of public benefit from a social and economic standpoint that a tax imposed for the construction, improvement, maintenance and repair of public highways is clearly for a public purpose. The preservation and protection of public highways when constructed are so manifestly in the public interest that reasonable measures having this end in view are clearly within the police power of the state.

That a state through its legislature has and may exercise plenary power over its public highways, whether they be state or county roads or city or town streets, has been removed entirely from the realm of controversy by former adjudication by this and other courts. Stewart v. Deland-Lake Helen S. R. & B. Dist., 71 Fla. 158, 71 South. Rep. 42; County Com'rs Duval County v. City of Jacksonville, 36 Fla. 196, 18 South. Rep. 339; State ex rel. v. Jacksonville Street R. R. Co., 29 Fla. 590, 10 South. Rep. 590; Grand Trunk Western Ry. v. South Bend, 227 U. S. 544.

Not only may a state construct and maintain its public highways in the exercise of its taxing power and protect and preserve them from deterioration, injury or destruction by an exertion of its police power, it may also contribute to the accamplishment of these ends by requiring citizens of the state to labor upon the public highways of the state and in doing so may classify such citizens, requiring some to labor and exempting others from labor, without impinging upon any provision of either the federal or state constitution. Butler v. Perry, 67 Fla. 405, 66 South. Rep. 150; Mashburn v. State, 65 Fla. 470, 62 South. Rep. 586; Galloway v. Town of Tavares, 37 Fla. 58, 19 South. Rep. 170; Butler v. Perry, 240 U. S. 328.

That a statute may have for its object the regulation of occupations or businesses only, or that it may have for its object the production of revenue only, or that it may perform the double function of regulating occupations or businesses under the police power and producing revenue under the taxing power of the state without rendering it obnoxious to any constitutional inhibition, is also well established. Harrison v. Kersey, 67 Fla. 24, 64 South. Rep. 353; Bradley v. Richmond, 227 U. S. 477. So that it is clear that these sovereign powers, namely, the taxing power and the police power, may be exerted independently or combined and jointly exerted in the construction and maintenance and the protection and preservation of the state's highways.

Thus far we have stated the underlying principles upon which the legislation involved is predicated. It is apparent that generally it is upon a sound basis.

In this proceeding several grounds of invalidity of the statute (Chapter 8410, Acts of 1921) are alleged, but in their essence, considered in connection with the oral argu-

ments of the case, they may be reduced to two propositions. In the first place, the validity of the statute is assailed upon the ground of alleged insufficiency of its title because of lack of conformity to the provisions of Section 16, Article III of the Constitution of the State of Florida, in that it contains no appropriation of the funds derived from enforcement of the provisions of the statute. In the second place, its validity is challenged upon the ground that the classification made in regulating the operation of motor vehicles upon public highways of the state and imposing license taxes thereon as a condition precedent to such operation is unjust, arbitrary and unreasonable, and therefore deprives persons of property without due process of law.

Unless the classification made of such vehicles by this statute in imposing the license tax complained of is "palpably arbitrary" the second ground of attack must fail. Inasmuch as the public highways of the state are constructed from public funds and maintained at public expense for the public benefit, it necessarily follows that the state in the exercise of its plenary control over such highways may adopt and enforce such reasonable and necessary measures as may be essential to prevent their improper use and consequent injury or destruction. Presumably this statute was enacted in the public interest. The legislature is the judge in the first instance of the necessity for it, and the burden is upon him who challenges it upon this ground to show that the classification made by it "is without any reasonable basis and therefore is purely arbitrary." Erie R. R. Co. v. Williams, 233 U. S. 685; Metropolis Theatre Co. v. Chicago, 228 U. S. 61; Lindsley v. Natural Carbonic Gas co., 220 U. S. 61; Keokee Coke Co. v. Taylor, 234 U. S. 224; Pullman Co. v. Knott, 235 U. S. 23; Rast v. VanDeman & Lewis Co., 240 U. S. 342.

The charge against the petitioner upon which he was taken into custody is the operation upon the highways of the state of a certain described truck or certain described trucks without having first paid the license tax imposed and required by the statute to be paid. The basis of classification of motor trucks under the statute in use, equipment and weight, those of certain weights and equipment used for hire being required to pay higher license taxes than those of like weight and equipment privately used, that is to say, generally those using the public highways in the conduct of their business may be required to pay higher license taxes for such privilege than those using such highways simply as an incident to the business in which they may be engaged although similar vehicles may be used, and those operating vehicles of greater weight and more destructive equipment upon the public highways are required to pay higher license taxes for such privilege than those who operate vehicles of less weight and less destructive equipment. There is clearly nothing "palpably arbitrary" and "without any reasonable basis" in this classification. On the contrary it would seem to have ample basis in reason and is clearly a matter of legislative judgment and discretion.

With respect to the other question, namely, the alleged insufficiency of the title of the statute, little need be said. The offense charged is the use of a public highway in violation of an express provision of a statute designated to regulate such use. If the regulation is valid, which it presumably is—the contrary has not been made to appear and we have not discovered wherein it is invalid—then clearly petitioner cannot expect to use such highway in the manner changed without having first complied with the conditions of the regulations as a prerequisite to his right

to do so, or, having done so without such compliance, must suffer the penalty imposed.

There are many other sources of revenue than this statute for the construction and maintenance of public highways, namely, congressional appropriations, state appropriations, together with county and taxing districts taxes. They are being and will continue to be constructed and maintained if no revenue at all is derived and paid into the treasury of the state and appropriated under this statute. Whether this legislation is productive of any revenue is not vital to this enterprise or the constitutional validity of the statute. Considering it as a regulation of "the operation of motor vehicles" upon the public highways of the state, it is clearly a proper exercise of legislative power and valid to that extent irrespective of whether the title is sufficient to cover the appropriation made, or attempted to be made. The petitioner cannot concern himself in this proceeding about the appropriation of revenues accruing under the law. They are required to be paid into the state treasury. The title is ample to require this to be done. If the language of the statute with respect to the appropriation should be found insufficient the funds will remain in the treasury until duly appropriated by legislative enactment (Section 4, Article IX, Constitution of Florida); and it will not be presumed that they will be appropriated to other than a public purpose. If an improper expenditure of such funds are attempted there is ample remedy against such attempt to this petitioner or any other citizen tax payer by appropriate proceedings instituted for that purpose. The decision therefore of the question of whether the title of the act is sufficient to cover the appropriation is not necessary for the proper disposition of this case.

No point made by the petitioner has been sustained and he should be remanded.

ELLIS, J.—Concurs.